[Civ. No. 17573. Third Dist. Oct. 2, 1978.]

DEPARTMENT OF GENERAL SERVICES et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY,
Respondent;
SACRAMENTO BUILDERS' EXCHANGE, INC., et al.,
Real Parties in Interest.

[Civ. No. 17574. Third Dist. Oct. 2, 1978.]

JOINT RULES COMMITTEE OF THE CALIFORNIA
LEGISLATURE, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY,
Respondent;
SACRAMENTO BUILDERS' EXCHANGE, INC., et al.,
Real Parties in Interest.

274

276

COUNSEL

Evelle J. Younger, Attorney General, Iver E. Skjeie, Assistant Attorney General, Richard D. Martland, Anthony S. DaVigo and Vance W. Raye, Deputy Attorneys General, Bion M. Gregory, Legislative Counsel, Edward F. Nowak, Principal Deputy Legislative Counsel, John T. Studebaker and James L. Ashford, Deputy Legislative Counsel, and David C. Rust for Petitioners.

No appearance for Respondent.

Ronald A. Zumbrun, John H. Findley and Sandra R. Johnson for Real Parties in Interest.

## OPINION

PUGLIA, P. J.—Petitioners herein are the Joint Rules Committee of the California Legislature and certain agencies in the executive branch of state government charged with responsibility for the reconstruction and restoration of the State Capitol. Real parties in interest are individuals, nonprofit organizations, and corporations for the most part connected with the construction industry. By their petitions for writ of mandamus or other appropriate relief, petitioners seek to have vacated an order of respondent superior court which granted real parties' motion for summary judgment. The ensuing trial court judgment held that the competitive bidding provisions of the State Contract Act (Gov. Code, § 14250 et seq.) governed petitioners in the performance of the duties imposed upon them by Government Code section 9124, and permanently enjoined them from failing to comply with section 9124 as thus construed.[1]

More specifically, the judgment provided in part: "The Court hereby issues its declaratory judgment declaring and determining that Section 9124 of the Government Code imposes a mandatory duty of [sic] the Joint Rules Committee of the California Legislature to cause the restoration and rehabilitation of the west wing of the State Capitol and in doing so to utilize competitive bidding in accordance with the provisions of the State Contract Act (Gov. Code §§ 14250 et seq.), including . . . award of contract to the lowest responsible bidder without consideration of race, color, or national origin of said bidder. . . ."

---

[1]At the time the trial court judgment was rendered, Government Code section 9124 in full provided: "(a) The Joint Rules Committee shall cause the restoration or rehabilitation of the west wing of the State Capitol so as to insure future use of the building in a manner befitting its historical significance.

"(b) All work of restoration or rehabilitation shall be administered and supervised by the Department of General Services and subject to review by the State Public Works Board pursuant to agreement with the Joint Rules Committee. For all such services of administration and supervision, the Department of General Services shall receive consideration not to exceed 2.7 percent of the total cost of restoration or rehabilitation.

"(c) Notwithstanding any other provisions of law, all work performed pursuant to this section shall be exempt from the provisions of the State Contract Act (Chapter 3 (commencing with Section 14250), Part 5, Division 3, Title 2, Government Code), provided, however, that all work shall be subject to competitive bidding except where determined to be impractical or unfeasible by joint action of the State Architect, the State Public Works Board and the Joint Rules Committee. All work performed pursuant to this section shall also be exempt from the provisions of the Environmental Quality Act of 1970 (Division 13 (commencing with Section 21000), Public Resources Code). The architect and contractor shall, however, be selected on the basis of their qualifications and experience in the restoration and reconstruction of historic buildings."

The controversy underlying these consolidated actions centers around a minority business enterprise (MBE) participation plan implemented in the Capitol restoration project. The plan requires that any subcontract proposal exceeding $250,000 must commit at least 20 percent of its total dollar value to a minority-owned business or minority-owned businesses in order to be "responsive" and eligible for consideration. Under the plan a minority business enterprise is one 50 percent or more of which is owned by members of a minority group, who are by definition limited to Blacks, Spanish-surnamed Americans, Orientals, and American Indians.

Real parties filed suit in superior court seeking to enjoin future application of the MBE requirement on grounds that the provision (1) violated competitive bidding requirements applicable to the capitol restoration project, and (2) violated the equal protection and due process guarantees of the California and United States Constitutions.

Petitioners' affirmative defense of laches was sustained by the superior court in an order dismissing the action. We issued a peremptory writ ordering the superior court to vacate its order of dismissal and enter an order denying petitioners' motion for dismissal on the basis of laches. (*Sacramento Builders' Exchange, Inc.* v. *Superior Court* (Aug. 4, 1977) 3 Civ. 16826 [unpub. opn.].)

Petitioners allege (and real parties do not deny) that on remand before the matter was set for trial the parties agreed that the issues presented for decision were: (1) whether the MBE participation plan violates the equal protection and due process guarantees of the United States and California Constitutions; (2) whether the plan violates Government Code section 9124; and (3) whether certain prequalification procedures are valid which were formulated by the prime contractor and the Joint Rules Committee after the filing of real parties' original action in the trial court.

On December 2, 1977, real parties filed a motion for summary judgment which petitioners allege was directed to only the first two issues. On January 26, 1978, the trial court rendered summary judgment in favor of real parties. The instant petitions ensued.[2]

---

[2]Separate petitions were originally filed in the Supreme Court by Joint Rules Committee (3 Civ. 17574) and jointly by Department of General Services, Public Works Board and State Architect (3 Civ. 17573). The cases were transferred to this court with directions to issue alternative writs. Thereafter, on our own motion, we consolidated the two proceedings.

## I

■ Real parties oppose the petitions for extraordinary relief on the basis that petitioners had an adequate remedy at law by way of direct appeal from the judgment. (Cf. Code Civ. Proc., § 904.1, subd. (a).) However, as we noted in our earlier decision concerning another aspect of this case, "the time constraints to which the State Capitol reconstruction project is subject reduce relief by appeal to a mere theoretical remedy. At the same time, the public importance of the questions involved in [this litigation] argues compellingly for their prompt resolution. . . ." (*Sacramento Builders' Exchange, Inc.* v. *Superior Court, supra,* 3 Civ. 16826, pp. 2-3.) Moreover, by transferring these causes to us with directions to issue alternative writs of mandamus, the Supreme Court has necessarily determined that petitioners have no adequate remedy in the ordinary course of law, and that extraordinary relief is therefore appropriate. (See *People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 492 [96 Cal.Rptr. 553, 487 P.2d 1193]; *San Francisco Unified School Dist.* v. *Johnson* (1971) 3 Cal.3d 937, 945 [92 Cal.Rptr. 309, 479 P.2d 669].)

## II

■ At the time the trial court entered summary judgment, Government Code section 9124 directed petitioner Joint Rules Committee to cause and administer the restoration of the west wing of the State Capitol. (See fn. 1, *ante,* p. 277.) The statute also contained the following provisions: "Notwithstanding any other provisions of law, all work performed pursuant to this section shall be exempt from the provisions of the State Contract Act . . . provided, however, that all work shall be subject to competitive bidding except where determined to be impractical or unfeasible by joint action of the State Architect, the State Public Works Board and the Joint Rules Committee. . . ." The trial court construed section 9124 to impose a mandatory duty upon the Joint Rules Committee in connection with the project to utilize competitive bidding in accordance with the provisions of the State Contract Act. It would appear in so ruling the court read the competitive bidding proviso as qualifying the exemption from the act.

■ In construing a statute, reference must be had to the whole system of law of which it is a part. (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]; *J. T. Jenkins Co.* v. *County of*

*Los Angeles* (1960) 178 Cal.App.2d 379, 383 [2 Cal.Rptr. 852].) ■ By its terms, the state Contract Act (Gov. Code, § 14250 et seq.) embraces projects within the jurisdiction of the Department of General Services and certain other departments in the *executive* branch of state government. (See Gov. Code, § 14254.5.) With exceptions not here applicable, the Joint Rules Committee, a committee of the legislative branch, has sole authority to determine how the space within the State Capitol building shall be allocated (Gov. Code, §§ 9108, 9109); however, maintenance and operation of the State Capitol building are under the authority of the Department of General Services (Gov. Code, § 9110). These provisions raise but do not resolve the question whether the restoration of the Capitol's west wing is a matter of "maintenance" within the purview of the Department of General Services and consequently, absent exemption, subject to the State Contract Act, or whether the project is within the legislative domain and therefore outside the ambit of the act. The Joint Rules Committee relies on Government Code sections 9108 and 9109 as authority for the proposition that the west wing of the Capitol is "under the jurisdiction of" the Legislature and therefore "any construction or restoration of the west wing could have been done solely by the Legislature . . . and this action would clearly not have been subject to the State Contract Act." However, the issue is not so clear. All that sections 9108 and 9109 do is give the Legislature "jurisdiction" to allocate the space within the west wing for various purposes. The sections do not purport to address the matter of "jurisdiction" over the Capitol building for purposes of upkeep, maintenance, restoration, or construction; and section 9110 specifically provides that *General Services* shall "control" the building, for "maintenance" and "operation" purposes. The Legislature's claim, which in essence is that the State Capitol is "its" building, to do with as it pleases, is mildly extravagant.

Nonetheless as it read at the time summary judgment was entered in the underlying action, section 9124 expressly exempted "all work performed [on restoration of the Capitol] . . . from the provisions of the State Contract Act." Since the concept of competitive bidding transcends the act, there is no facial conflict between the exempting language and the following phrase which requires competitive bidding but makes no reference to the act; thus the trial court's construction cannot be justified as a means of resolving conflicting terms to give effect to all parts. (Cf. Code Civ. Proc., § 1858.)

■ Statutes are to be construed so as to avoid surplusage, with the presumption that "every word, phrase and provision was intended to have some meaning and perform some useful office, . . ." (*Woodmansee v. Lowery* (1959) 167 Cal.App.2d 645, 650 [334 P.2d 991]; see also *J. T. Jenkins Co. v. County of Los Angeles, supra,* 178 Cal.App.2d at pp. 383-384.) ■ By effectively nullifying the provision in section 9124 which exempts "all work . . . from the provisions of the State Contract Act" the trial court's interpretation of the measure runs afoul of this basic principle of statutory construction and is erroneous.

## III

The trial court rendered judgment on January 26, 1978. By February 24, 1978, Assembly Bill No. 2495 had been introduced and passed as an urgency measure. The bill was signed by the Governor on March 3, 1978. It provides, inter alia: "Section 1. The Legislature hereby finds and declares that the purpose of this act is to reaffirm the intent of the Legislature in the enactment of Section 9124 of the Government Code. . . . [T]he Legislature hereby further finds and declares: (1) The Legislature and its committees have never been subject to any provision of the State Contract Act; . . . [¶] (3) The Legislature at all times intended that 'competitive bidding,' in its generic sense, be utilized by the Joint Rules Committee in the restoration and rehabilitation of the State Capitol. The Legislature did not intend by use of the phrase 'competitive bidding' in Section 9124 to refer to, adopt, or incorporate, in any way or circumstance, any bidding provisions or procedures of the State Contract Act, whatever they might be. . . ." Section 2 of the measure adds to Government Code section 9124, subdivision (d), which defines "competitive bidding" for purposes of that section.[3] And section 3 declares "[s]ections 1 and 2 of this act do not constitute a change in, but are declaratory of, the preexisting law." (Stats. 1978, ch. 25.)

---

[3]"SEC. 2. Section 9124 of the Government Code is amended to read: . . . [¶] 'Competitive bidding' includes, but is not limited to, consistent with the uniqueness of the restoration or rehabilitation of the west wing of the State Capitol, provision for: public advertisement for prequalification of responsible bidders, prequalification of responsible bidders, bonding, submission of sealed bids, public opening of bids, award of contracts to the lowest prequalified responsive bidder, rejection of all bids in the event the lowest responsive bid exceeds estimates, prevailing wages, workers' compensation, and safety rules and regulation. Such provision may include requirements as set forth, on the effective date of the amendment of this section by the Legislature at the 1977-1978 Regular Session, in the contract between the Joint Rules Committee and the contractor."

While we are not bound by the Legislature's characterization of Assembly Bill No. 2495 as merely declaratory of preexisting law, it is a factor we have considered in construing section 9124 in its original form. (*West Pico Furniture Co.* v. *Pacific Finance Loans* (1970) 2 Cal.3d 594, 609-610 [86 Cal.Rptr. 793, 469 P.2d 665].) However, no further consideration of Assembly Bill No. 2495 is necessary in view of our holding that the trial court's construction of section 9124 was in any event erroneous. Moreover Assembly Bill No. 2495 purports to make no substantive changes in those parts of the statute upon which the trial court based its ruling.

IV

There remain the constitutional issues raised by the imposition of the racial quota in this case. Real parties urge that we consider and dispose of their equal protection claim as a question of law to be resolved on the record in this proceeding.

Rights guaranteed by the Fourteenth Amendment are personal rights guaranteed to individuals, not classes. (*University of California Regents* v. *Bakke* (1978) 438 U.S. 265, 289 [57 L.Ed.2d 750, 770, 98 S.Ct. 2733] (opn. of Powell, J.); *Bakke* v. *Regents of University of California* (1976) 18 Cal.3d 34, 51, fn. 17 [132 Cal.Rptr. 680, 553 P.2d 1152].) Moreover, the protection of those rights is available alike to all persons irrespective of race, color or national origin (*University of California Regents* v. *Bakke, supra,* 438 U.S. at p. 293 [57 L.Ed.2d at pp. 772-773] (opn. of Powell, J.); *Bakke* v. *Regents of University of California, supra,* 18 Cal.3d at p. 51, fn. 18.)

Real parties claim and the record bears out that the MBE participation plan deprives them, solely on the basis of race and national origin, of the opportunity to compete for 20 percent of the construction dollars to be expended for major subcontracts (those over $250,000 in value) awarded on the capitol restoration project. Real parties are either victims of invidious unconstitutional discrimination or merely the hapless objects upon whom by chance the legislatively ordained burden of a constitutionally proper racial-ethnic preference falls most heavily.

Cases which apply equal protection standards under the federal Constitution suggest the validity under certain limited circumstances of

preferences to minorities in employment.[4] While we are not dealing here with employment in the strict sense of the term, the economic interests of the real parties which are affected by the MBE participation plan are so like those involved in the employment cases that those decisions are particularly instructive. Thus we note that minority preferences in employment have been upheld only where there has been a legislative or administrative finding of prior constitutional or statutory violations resulting in discrimination by the affected industry or employer, and an appropriate remedy formulated to rectify it. (*University of California Regents* v. *Bakke, supra,* 438 U.S. at pp. 302, 307 [57 L.Ed.2d at pp. 778-779, 782] (opn. of Powell, J.); *Bakke* v. *Regents of University of California, supra,* 18 Cal.3d at pp. 57-59.) Such findings are of vital constitutional significance. They provide the basis for determining that "the governmental interest in preferring members of the injured groups at the expense of others is substantial, since the legal rights of the victims must be vindicated. In such a case, the extent of the injury and the consequent remedy will have been judicially, legislatively or administratively defined. Also the remedial action usually remains subject to continuing oversight to assure that it will work the least harm possible to other innocent persons competing for the benefit. Without such findings of constitutional or statutory violations, it cannot be said that the government has greater interest in helping one individual than in refraining from harming another. Thus, the government has no compelling justification for inflicting such harm." (Fn. omitted; *University of California Regents* v. *Bakke, supra,* 438 U.S. at pp. 307-309 [57 L.Ed.2d at pp. 782-783] (opn. of Powell, J.).)

Real parties assert that there has been no showing of particularized discrimination on the part of those who must bear the burden of this racial-ethnic preference or even a generalized finding of discrimination, and furthermore, that no legislative hearings were held on the MBE participation plan. Petitioners on the other hand offer to prove at trial "a history of racial discrimination by both the state and the construction industry of this state. The voices of minority contractors will be heard in testimony showing the deprivation of their constitutional rights resulting from such discrimination."

---

[4]Real parties do not contend that equal protection as guaranteed by the California Constitution (art. I, § 7) affords more protection to nonminorities from the burden of minority preferences than does the federal Constitution. (See *Serrano* v. *Priest* (1976) 18 Cal.3d 728, 760-769 [135 Cal.Rptr. 345, 557 P.2d 929].)

Both parties are wide of the mark. First, in the trial court the real parties made no competent showing on the summary judgment motion that the MBE participation plan was not the product of legislative hearings or based upon precedent findings of discrimination. The summary judgment motion relied generally upon the "pleadings, records and papers on file" in the action. No declarations or affidavits were filed in conjunction with the summary judgment motion nor was any other evidence produced.[5] Moreover the trial judge's attention was not directed specifically to any place in the voluminous record in the trial court where the absence of precedent legislative findings was shown, competently or otherwise.[6] ▪ It is academic that the burden is on the party moving for summary judgment; because of the drastic nature of the remedy sought, he is held to strict compliance with the procedural requisites. (See generally, 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, §§ 180-187, pp. 2832-2837.)

But just as real parties misconceive the limitations on summary judgment, petitioners misapprehend the scope of trial of the constitutional issue on remand. Minority preference, if constitutional at all, must be remedial, i.e., directly responsive to a demonstrated precedent violation of statutory or constitutional rights. Post hoc justifications, precipitated by litigation, are an inadequate substitute for the kind of administrative or legislative findings required to limit the burden cast on nonminorities to the confines of the compelling governmental need. (*University of California Regents* v. *Bakke, supra,* 438 U.S. at p. 309 [57 L.Ed.2d at p. 783] (opn. of Powell, J.).) Anything less would render the rights of all individuals subject to the whim, caprice and indulgence of governmental functionaries. "To hold otherwise would be to convert a remedy heretofore reserved for violations of legal rights into a privilege that all institutions throughout the Nation could grant at their pleasure to whatever groups

[5]The record provided this court in this proceeding is extremely skimpy and does not include the motion for summary judgment and supporting papers, or the opposition thereto. In the instant petition, however, reference is made to exhibits filed in this court in a companion proceeding seeking extraordinary relief. (3 Civ. 17435.) Although the petition in that case was summarily denied on January 12, 1978, we have retrieved the record from storage and found therein the summary judgment proceedings.

[6]Part of the trial court record was before this court in connection with real parties petition for peremptory writ commanding the trial court to vacate its dismissal of the action for laches. (3 Civ. 16826.) That portion of the record fills over 12 inches of shelf space and includes numerous depositions, declarations and affidavits of parties and witnesses. In our review of the record at that time, we were not concerned with the issues now before us. (See *Sacramento Builders' Exchange, Inc.* v. *Superior Court, supra,* 3 Civ. 16826 [unpub. opn.].)

are perceived as victims of societal discrimination." (*University of California Regents* v. *Bakke, supra,* 438 U.S. at p. 310 [57 L.Ed.2d at p. 784] (opn. of Powell, J.).) Thus on remand the relevant inquiry will be whether the appropriate legislative findings were actually made prior to the formulation and implementation of the MBE participation plan. ▮ If they were made, it must further be demonstrated at trial that the state has a compelling governmental interest in furthering the objectives of the MBE participation plan, that the plan is necessary to serve that interest, and that it constitutes the means to that end least destructive of the rights of nonminorities. Since the classification denies to nonminorities solely on the basis of race the right to compete for a substantial portion of the dollar value of subcontracts on the capitol restoration plan, it is suspect and must be subjected to strict and exacting scrutiny. (*University of California Regents* v. *Bakke, supra* 438 U.S. at pp. 307-321 [57 L.Ed.2d at pp. 781-790] (opn. of Powell, J.); *Bakke* v. *Regents of University of California, supra,* 18 Cal.3d at pp. 49-51, 53, 60, fn. 30.)

## V

Because of the erroneous determination of the trial court that section 9124 called for "competitive bidding in accordance with the provisions of the State Contract Act" and because there are triable issues of fact with regard to the constitutional questions raised in the underlying case, the order granting summary judgment may not stand.

Let a peremptory writ issue ordering respondent superior court to vacate its order of January 26, 1978, granting real parties' motion for summary judgment in superior court case number 265006 and to enter instead an order denying the motion. The alternative writs, having served their purpose, are discharged. Petitioners are to recover their costs.

Regan, J., and Paras, J., concurred.