[Civ. No. 16328. Third Dist.. Apr. 4. 1979.]

JOHN DAWN, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD, Defendant and Respondent.

## COUNSEL

Loren E. McMaster and Gary P. Reynolds for Plaintiff and Appellant.

Evelle J. Younger, George Deukmejian, Attorneys General, and Anthony S. DaVigo, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**REGAN, J.**—Plaintiff Dawn filed a petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5; it sought review of defendant's decision affirming a promotional appointment of a woman, Patricia

Khan, to a civil service position which plaintiff alleged he would have received had the law been properly applied.

■ The fundamental question on appeal is whether the judgment of the trial court denying the petition for mandate is supported by substantial evidence, viewing the record in the light most favorable to defendant. (*Brush* v. *City of Los Angeles* (1975) 45 Cal.App.3d 120, 123 [119 Cal.Rptr. 366]; *Harmon* v. *Board of Retirement* (1976) 62 Cal.App.3d 689, 691-692 [133 Cal.Rptr. 154].)

The defendant State Personnel Board (board) is created and established by article VII, section 2, of the California Constitution. Plaintiff was a civil service parole agent I in the Department of the Youth Authority. In September 1971, a promotional examination was given for the position of parole agent II. A number of parole agents I, including plaintiff and Khan, took the examination. Plaintiff placed in the third "rank" of eligibles and Khan in the sixth.[1] In 1974, when an appointment was made to an open position of parole agent II, Khan was appointed from the list of eligibles established by the 1971 examination. At the time of appointment she and plaintiff were both available therefor under the rule of the "three highest ranks" (as provided on Gov. Code, §§ 19057 and 19057.1), since the eligible persons in the other ranks above rank six had been eliminated by previous appointment or by waivers.

Following the appointment of Khan, plaintiff filed a formal employee grievance which was heard in the department by the parole administrator; after "formal, structured interview" procedures, the administrator found the appointment was legal since Khan was in the first three ranks.[2] The director affirmed this finding. The grounds of plaintiff's grievance were that he was more qualified due to a wider range of experience, and was higher on the list. He asserted he was "passed over" due to the affirmative action program. His supervisor, George Hopkins, who had made the appointment of Khan, stated plaintiff and Khan were "equally qualified" and in the absence of a compelling reason to act otherwise he supported the departmental policy of recruiting and promoting more ethnic minorities and women.

[1] A "rank" consists of one or more eligibles with the same whole percentage score, after rounding each score to the nearest whole percent. (Gov. Code, § 19057.1.)

[2] The statement of the administrator set forth the following:

"We had considerable discussion about the degree of who was most qualified and the question raised was that the affirmative action policy would only come into effect when both candidates were equally qualified. It is Mr. Dawn's contention that he is more qualified because he had been a parole agent for twelve years, compared to Mrs. Khan's

Plaintiff appealed to the board, which, after hearing procedures, found that both plaintiff and Khan were eligible for appointment and that the department was free to choose between equally eligible persons. It affirmed the appointment. In so doing, it had before it the same charge of sex·discrimination which had been made before the departmental reviewing officer. It concluded, in effect, that as long as the appointment was from among equally eligible or qualified persons, the matter of sex discrimination was not an issue. In so concluding, the board, like the departmental reviewing officer, had before it the statement of George Hopkins, supervising parole agent, that "both candidates were equally qualified for promotion . . . ."[3]

Plaintiff contends he was denied the right to advance in California civil service on the basis of merit and ability as required by the California Constitution and civil service statutes. He makes reference to the merit system requiring appointments and promotions "under a general system based on merit ascertained by competitive examination." (Cal. Const., art. VII, § 1, subd. (b).) He also refers to various provisions of the Government Code providing for a comprehensive plan of civil service (see Gov. Code, § 18900 et seq.), some of which emphasize promotion of employees showing fitness, willingness, ability and efficiency. (See, e.g., Gov. Code, §§ 18930, 18951.) None of these provisions however, nor any other provisions of law, derogate from the clear right of an appointing power within an agency to promote from among any persons who have attained by examination one of the three highest ranks as provided in Government Code section 19057.1 where, as here, such persons are of

nine years, that he had worked in a Youth Authority institution before he came into parole, and that from time to time he had been left in charge of the office in the absence of the supervisor and assistant supervisor, and that he had been trusted to present the unit cases to Board.

"The supervisor states that both employees were equally qualified for the position because of their background and their functioning as parole agents. Mrs. Khan has, in addition to her parole agent experience, worked in the correctional setting in another state, worked in the Welfare Departments of Alameda and San Francisco Counties, and was a supervisor in the welfare department. Both candidates have demonstrated that they are exceptionally good parole agents and both are ready for promotion and both are qualified for promotion. The appointment of Mrs. Khan was legal in that she was in the first three ranks. With a statement from the supervisor that he found them both equally qualified, the affirmative action policy of the department would call for the appointment of a woman. I find no illegalities in the promotion and therefore must refuse to declare the appointment illegal and must refuse to appoint Mr. Dawn in that position."

[3]The board also had before it a statement by another Parole Agent II, Bernard C. Stone, who stated that Khan was a good parole agent but she did not in his opinion "demonstrate the leadership and supervisory characteristics" shown by plaintiff. Stone expressed opposition to the affirmative action policies of the department and believed Khan was promoted only because she was a woman.

equal ability as found by their superiors. It cannot reasonably be said that by choosing one the other has been denied the right to advance on the basis of merit and ability. (See *Paule* v. *State Personnel Board* (1974) 38 Cal.App.3d 32, 35-36 [113 Cal.Rptr. 38].) Being on an eligible list affords no *right* to an appointment. (*Graham* v. *Bryant* (1954) 123 Cal.App.2d 66, 70-71 [266 P.2d 44].)

Plaintiff contends that Government Code section 19057.1, "the 'rule of three ranks,' does not permit the use of discriminatory, non-job-related selection methods for promotional appointments." Plaintiff does not challenge the validity or contents of the department's affirmative action plan as such and agrees with the social purpose of affirmative action programs. However, it is his position that such practices or programs (affirmative action) cannot be upheld when "in conflict" with the merit system of civil service, which constitutionally mandates merit and ability as the means of advancement.

Plaintiff has referred us to a number of federal cases in which the courts have attempted to reach a balance between merit system selection of employees, affirmative action programs, and the various civil rights acts prohibiting race and sex discrimination. When there is a *conflict* among these programs and laws there are serious problems. (See, e.g., *Bridgeport Guard., Inc.* v. *Members of the Bridgeport C. S. Com'n* (2d Cir. 1973) 482 F.2d 1333; *Kirkland* v. *New York St. Dept. of Correctional Serv.* (2d Cir. 1975) 520 F.2d 420; *Equal Employment Opportunity Com'n* v. *Local 638* (2d Cir. 1976) 532 F.2d 821; cf. *Bakke* v. *Regents of University of California* (1976) 18 Cal.3d 34 [132 Cal.Rptr. 680, 553 P.2d 1152], cert. granted 429 U.S. 1090 [51 L.Ed.2d 535, 97 S.Ct. 1098]; *University of California Regents* v. *Bakke* (1978) 438 U.S. 265 [57 L.Ed.2d 750, 98 S.Ct. 2733].) But the key word is *conflict.* We do not perceive a conflict here of the sort which has plagued the courts in other instances. The record in this case, when read most favorably to defendant as must be done, leaves us with no doubt that there is substantial evidence that the two persons involved were "equally qualified" as expressly or impliedly found by the supervising parole agent, the parole administrator, the department director, the State Personnel Board, and the superior court. The finding of equal qualification must be made by someone other than a reviewing court, whose role is to determine only whether the finding is adequately supported. It is. This being so, plaintiff was denied no right under state or federal fair employment or civil rights laws relating to sex discrimination; nor is there any conflict here between the civil service laws as applied and any state or federal fair employment or civil rights laws prohibiting sex

discrimination. Both plaintiff and Khan were equally qualified for promotion by department standards and pursuant to Government Code section 19057.1. Under these conditions the department chose Khan in an effort to further the goals of an affirmative action plan[4] it had adopted pursuant to the authority of Government Code sections 19702, 19702.1, 19702.5 and 19705. This policy favoring Khan has no equal protection significance, for it is only a *denial* of equal treatment that the law condemns. Dawn was not denied any right when he was only "equally" and not "better" qualified than Khan for the promotion. No more could Khan have been offended had the policy been just the opposite and Dawn was promoted. The choice, whether for or against Dawn, was constitutionally meaningless once total equality of qualification was objectively determined.

The judgment is affirmed.

**PARAS, J.,** Concurring.—The lead opinion is correct and its reasoning sound. I fully concur. I render this separate opinion only to emphasize my reasons for the belief that while the constitutional precepts embraced by the dissent are and ever should be sacred, they do not forbid the action taken here. They do however forbid anything more, for I see the preference accorded Khan as the outer limit of governmental favoritism permitted by equal protection guarantees. Anything more than a preference applied where, and only where, there is full and true objective equality of qualification is abhorrent to the Constitution and to the democratic ethic therein proclaimed.

The term "affirmative action" has entered our common parlance in the wake of the struggle of the past 30 years to eliminate racial (and other) discrimination in employment, education, housing, travel, etc. Although the frequent topic of discussion, the term is rarely defined in advance so as to form a common base for intelligent discourse. This lack of definition (sometimes perhaps deliberate, as pointed out in the lead opinion) is responsible for much of the confusion, misunderstanding, and disagreement regarding the subject. I deem it essential to any sensible discussion of affirmative action that the term first be defined.

[4]The term "affirmative action" often leads to unnecessary confusion and misunderstanding because of a failure in advance to agree upon or assume a definition for it. Among politicians especially, the lack of advance definition often appears deliberate. It can be defined either as (1) a preference for certain persons where there is total equality of objectively ascertained qualifications, or (2) a preference for persons with lower objectively ascertained qualifications, to the corresponding exclusion of persons better qualified. We deal here only with the former. (See *Bakke* v. *Regents of University of California, supra,* 18 Cal.3d 34.)

Two types of affirmative action have manifested themselves, one benign (cf. *Bakke* v. *Regents of University of California* (1976) 18 Cal.3d 34, 48, fn. 12 [132 Cal.Rptr. 680, 553 P.2d 1152]), the other malignant.

Benign affirmative action is embodied in the legislative declaration underlying official affirmative action programs in California. In part, section 1 of Statutes 1977, chapter 943, declares:

"(b) It is the policy of the Legislature to encourage the state civil service system to utilize to the maximum all available human resources *to provide equal employment opportunity to all persons without regard to race, color, religion, national origin, political affiliation, sex, age, or marital status*; and, *insofar as possible,* to achieve and maintain a work force in which are represented the diverse elements of the population of the State of California.

"(c) *Beyond assurances of nondiscrimination,* it is the policy of the State of California to have each state hiring unit initiate comprehensive written affirmative action programs *which will take steps to remedy any disparate staffing and recruitment patterns.*

"(d) This equal employment opportunity policy is adopted to insure that maximum utilization of human resources occurs, *that true equality of opportunity is a reality* with the State of California, and that the rights of *all* employees and applicants are safeguarded." (Italics added.)

Detailed statutory provisions involving affirmative action are also to be found elsewhere throughout California's laws (see Gov. Code, § 19790 et seq.; Gov. Code, § 50085.5; Gov. Code, § 19701 et seq.; Gov. Code, § 19400 et seq.; Lab. Code, § 1411 et seq.). A further definition is provided in Labor Code section 1413, subdivision (g), which reads: " 'Affirmative actions' means any educational activity for the purpose of securing greater employment *opportunities* for members of racial, religious, or nationality minority groups and any promotional activity designed to secure greater employment *opportunities* for the members of such groups on a voluntary basis."[1] (Italics added.)

It will be noted from a careful study of the above statutes that the legislative objective is to do everything possible to train, educate, counsel,

---

[1] Although women are not expressly listed as a minority category in Labor Code section 1413, they are well within the spirit of the statute. That subject of course is expressly addressed by article I, section 8 of the California Constitution.

assist, and encourage members of minorities *to become qualified for* and to accept positions of employment so as to increase their overall participation therein. The key word is "opportunity" and the focus is upon its continual enlargement. It is noteworthy, however, that with one minor exception,[2] throughout all the legislation on the subject there is nowhere to be found any trace of a statutory undertaking to reject objectively better qualified persons in favor of others less qualified. California does not *officially* countenance such action.

Benign affirmative action of this type is universally applauded. It offends no one and violates no rights. It promotes pride of achievement, avoids resentment, and in due course accomplishes the objective of making a reality of the true equal opportunity ideal.

Malignant affirmative action on the other hand is to be universally condemned by all fairminded people. It occurs where persons objectively better qualified are pushed aside in favor of others less qualified, for no other reason than their sex or minority status. Affirmative action of this sort is but a euphemism for precisely the same invidious and shameful activity which brought about the great reforms of the past three decades, and which now seemingly is in turn demanded by many of those whom it originally victimized. Such affirmative action was held unconstitutional in *Bakke, supra,* 18 Cal.3d 34, for reasons eloquently and irrefutably set forth in the exemplary opinion of Justice Mosk.

Indeed, the equal protection provisions of both the state and federal Constitutions recognize no "chosen people," be they female, male, white, black, oriental, Indian, or members of that most nebulous and abuse-provoking category of all, "Spanish-surnamed Americans."[3] The word "equal" cannot but have the same meaning under all circumstances, unaffected by the numerical quantity of persons involved. (See *Bakke, supra,* 18 Cal.3d at p. 53.) It would be the worst kind of irony to have

[2] I find that exception in a 1978 amendment (Assem. Bill No. 2495) to Government Code section 9124, which deals with "restoration or rehabilitation of the west wing of the State Capitol." The amendment expressly condones a provision of the prime contract for work on the Capitol Building in Sacramento imposing a quota requirement on the award of subcontracts in favor of "Blacks, Spanish-surnamed Americans, Orientals, and American Indians." (See *Department of General Services* v. *Superior Court* (1978) 85 Cal.App.3d 273, 278, 281 [147 Cal.Rptr. 422].)

[3] I know a woman named Campos, who is of English, Italian, and Swedish ancestry, and who owes her Spanish surname to a former marriage. I know another of true Hispanic ancestry, formerly surnamed Jiminez, who now bears a Nordic surname as a result of marriage. The variations on the theme of who has and who has not a "Spanish" surname, and why, are endless.

spent so many years righting past discriminations violative of equal protection and to now undertake consciously to impose them in the name of righting past wrongs.[4] Inherent in a system which officially prefers any group over another is the corruption, and ultimate destruction, of this cardinal principle.[5]

I view the action of the board here as simply responsive to the benign affirmative action objectives of our statutory law. The existence vel non of equality of qualification is a question of fact to be determined by a factfinder. That was done here in accordance with traditional factfinding principles. The record discloses no reason to believe that such determination was not made in good faith or on substantial evidence. As a reviewing court, we have no cause to interfere with it.

Given therefore the propriety of the finding of equality of objective qualifications, we simply do not have a constitutional issue. The final selection could have been made by drawing straws, without emotionally or legally offending either candidate; the use of a benign affirmative action policy to break the tie is surely no less appropriate. Were we to uphold Dawn's claim, we would in effect give to him the very preference he condemns because accorded administratively to Khan; yet he is no better qualified for the higher position than she, and thus asks us to bestow the fortuitously available advantage upon him, to her consequent disadvantage. Under the circumstances, the preference to either of the two is of whimsical, not constitutional, significance. No rights have been infringed and no legal impropriety perpetrated.

**PUGLIA, P. J.**—I dissent.

Plaintiff John Dawn and Patricia Khan were employed by the State of California in the classified service; they worked in the San Jose office of the California Youth Authority (department) as parole agents grade I.

---

[4]Nor can a racial or sex preference be disguised successfully by such methods as a declaration that the sole standard for selection is merit, but minority status itself constitutes a measure of merit. (See *Bakke* v. *Regents of University of California* (1976) 18 Cal.3d 34, 47-48 [132 Cal.Rptr. 680, 553 P.2d 1152].)

[5]I do not ignore the line of authority which has upheld minority preference in employment based upon proven past discrimination. (See authorities cited in *Bakke, supra,* 18 Cal.3d at pp. 57-60; *University of California Regents* v. *Bakke,* 438 U.S. 265, 301-307 [57 L.Ed.2d 750, 778-782, 98 S.Ct. 2733] opn. of Powell, J.) But whether permissible or not under the federal Constitution, I find such preferences repugnant to article I, sections 7, subdivisions (a), (b) and 8 of our California Constitution. (See *People* v. *Pettingill* (1978) 21 Cal.3d 231, 247-248 [145 Cal.Rptr. 861, 578 P.2d 108]; *Serrano* v. *Priest* (1976) 18 Cal.3d 728, 760-769 [135 Cal.Rptr. 345, 557 P.2d 929].)

Plaintiff and Khan were on a civil service list established by competitive examination for promotion to the next highest class, parole agent grade II. A single vacancy occurred in the San Jose office for parole agent II. At that time plaintiff and Khan were in the three highest ranks on the list certified to the appointing authority and were considered by their supervisor as qualified for and deserving of advancement. Khan received the promotion; contrary to the implication in the majority opinion, plaintiff was not interviewed for the position and in fact was accorded no more than formal consideration for advancement. The uncontradicted evidence conclusively establishes that the decisive factor in the appointment was gender. Khan was successful because she is female; it is equally clear that plaintiff was not seriously considered for promotion because he is male.

The majority find nothing in these facts to commend the intercession of this court, apparently because the two candidates were deemed equally qualified and the appointment was made from among those in the first three ranks on the promotional list. Nevertheless, putting aside constitutional considerations the promotional procedures employed here ignored a clear-cut legislative directive forbidding sex discrimination in the classified service and violated title VII of the federal Civil Rights Act of 1964 (the Act). Plaintiff is therefore entitled to a writ of mandate to relieve him of the consequences of the department's illegal conduct.

In 1971 plaintiff and Khan took a competitive examination for promotion to parole agent grade II. Thereafter both were placed on an eligible list, plaintiff in the third and Khan in the sixth rank. Between their respective ranks were 27 other candidates in ranks four and five.

In December 1974, a vacancy occurred in the San Jose office in the parole agent II class. By that time, attrition and waivers had reduced the number of interested eligibles on the 1971 list. Aside from plaintiff and Khan there was an interested male candidate in rank two, a female in rank three and another male in rank six.

George Hopkins was the supervisor of both plaintiff and Khan in the San Jose office. Margaret Baer, a parole administrator, was Hopkins' superior. Baer advised Hopkins that "both Mr. Dawn and Mrs. Khan were eligible for appointment to this [parole agent II] position" and "stated a preference for appointing Mrs. Khan, because of the department's affirmative action policy, unless [Hopkins] felt Mrs. Khan was unqualified for promotion." Hopkins informed Baer that "both candi-

dates were equally qualified for promotion and both deserved to be promoted." Hopkins assured Baer that he "recognized [his] responsibility as a supervisor to support the department's affirmative action policy in regards to recruitment and promotions."

After Khan was promoted, plaintiff filed an employee grievance with the department, complaining that he had been passed over for promotion due to "misapplication of Affirmative Action policies . . . ." At the initial review of the grievance Hopkins explained to plaintiff that there were two equally qualified people, plaintiff and Khan, eligible for promotion in the San Jose office; that it was departmental policy to recruit and promote more minorities and women; and that absent a compelling reason to act otherwise, it was his responsibility as a supervisor to support affirmative action in this promotional situation. Hopkins denied plaintiff's grievance.

Parole Administrator Baer conducted the second level of review. She also denied plaintiff's grievance, explaining her reasons as follows: "[T]he affirmative action policy would only come into effect when both candidates were equally qualified. . . . Both candidates have demonstrated that they are exceptionally good parole agents and both are ready for promotion and both are qualified for promotion. The appointment of Mrs. Khan was legal in that she was in the first three ranks. With a statement from the supervisor that he found them both equally qualified, the affirmative action policy of the department would call for the appointment of a woman."

Plaintiff's grievance was denied at the departmental level and he appealed to the respondent board. The board sustained the promotion of Khan, finding that it was in accord with established standards and with Government Code section 19057.1 which requires that a classified position be filled from among the first three ranks on the list of eligibles. The superior court denied plaintiff's petition for mandate.

Government Code section 19702 forbids discrimination because of sex in the state classified service. Section 19702.1 requires that hiring and promotion in the state classified service shall conform to the federal Civil Rights Act of 1964. Title VII of the Act applies not only to private employers but by its own terms to state and local governments as employers. (42 U.S.C. § 2000e(a), (b); *Monell* v. *Dept. of Soc. Serv. of City of New York* (2d Cir. 1976) 532 F.2d 259, 261.) Under the Act it is an unlawful employment practice for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment because of such individual's . . . sex . . . or . . . to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex, . . ." (42 U.S.C. § 2000e-2(a)(1) and (2).) "Discriminatory preference for any group, minority or majority, is precisely and only what Congress has proscribed." (*Griggs* v. *Duke Power Co.* (1971) 401 U.S. 424, 431 [28 L.Ed.2d 158, 164, 91 S.Ct. 849].)

Notwithstanding these remarkably straightforward strictures, and despite the explicit disavowal of the Act to require preferential treatment to remedy gender imbalance within an employment unit (42 U.S.C. § 2000e-2(j)), the department, in thrall to some misguided notion of affirmative action, accorded preferential treatment to Khan and discriminated against plaintiff, in each case solely on the basis of sex.[1]

Respondent board claims that Government Code section 19057.1 confers virtually unlimited discretion on the appointing authority in promoting from among those in the top three ranks. The majority accept this thesis as the basis of their decision. In effect, they hold that because there need be *no* reason for the ultimate selection from among the finalists, reasons therefor which in any other employment context would be proscribed by law as impermissibly discriminatory are acceptable. I cannot accept that a candidate for promotion, otherwise protected by law from discriminatory treatment, is deprived of that protection when he most needs it, that is, when he becomes a viable rather than merely a theoretical candidate for advancement. I cannot accept that discrimination solely on account of sex is any less invidious because the victim has achieved the distinction of rising above most of his competitors to the threshold of advancement.

[1]Affirmative action has developed along a number of disparate lines. In many of its manifestations it provides the necessary impetus to insure equal opportunities for all individuals. At times, however, what is styled "affirmative action" is in reality a scheme which operates unlawfully to deprive an individual (i.e., *any* member of the human race) who is himself without fault of rights to which he is lawfully entitled. The latter type of "affirmative action" was the subject of trenchant comment by a leading constitutional scholar: "The lesson of the great decisions of the Supreme Court and the lesson of contemporary history have been the same for at least a generation: discrimination on the basis of race is illegal, immoral, unconstitutional, inherently wrong, and destructive of democratic society. Now this is to be unlearned and we are told that this is not a matter of fundamental principle but only a matter of whose ox is gored. Those for whom racial equality was demanded are to be more equal than others. Having found support in the Constitution for equality, they now claim support for inequality under the same Constitution." (Bickel, The Morality of Consent (1975) p. 133 quoted in *University of California Regents* v. *Bakke* (1978) 438 U.S. 265, 295, fn. 35 [57 L.Ed.2d 750, 774, fn. 35, 98 S.Ct. 2733], opn. of Powell, J.)

A "rank" as the term is used in Government Code section 19057.1 consists of "one or more eligibles with the same whole percentage score." "Scores of eligibles . . . shall be rounded to the nearest whole percent." (Gov. Code, § 19057.1.) Hence, the top three ranks of eligibles will frequently include more than three individuals, perhaps considerably more than three. In direct proportion to the numbers included, the odds are enhanced that in respect to any promotional opportunity the top three ranks of eligibles will include at least one individual who by reason of sex, race, ethnicity or national origin enjoys a preferred status in the employer's affirmative action scheme. If the majority holding accurately reflects the law, and if, as that holding implies, an employer may in the instant circumstances pursue affirmative action contrary to the clear prohibitions of the federal Civil Rights Act, then an employer need never promote anyone but those upon whom have been bestowed a preferred status. Conceivably then the department may in every similar situation that arises in future, promote a female to parole agent grade II, assuming of course that a female is included among those in the top three ranks of eligibles, a fair assumption in light of current realities.

It is of course true that a public employer has wide discretion to promote or hire from among those in the top three ranks of eligibles. As a concomitant thereof the employer need not expressly justify or otherwise give reasons for his selection of one from among several. Here, although there were five eligibles in the top three ranks the record, particularly the statements of Hopkins and Baer, is susceptible to the unmistakable inference that plaintiff and Khan were the only real contenders for the position. The department unambiguously declared the reason why Khan was selected over plaintiff, i.e., because she is female and, by clear implication, because plaintiff is male. The revelation is gratuitous and is not a *sine qua non* to a finding of unlawful discrimination. Because of the department's admission, however, the ultimate fact is not open to dispute and the legal conclusion of unlawful discrimination ineluctably follows therefrom. However, the omission of an employer to state reasons, while it undoubtedly makes the task more difficult, does not necessarily preclude a finding of unlawful discrimination where, for instance, a pattern of preferential discrimination in prior similar situations can be established.

The majority opinion emphasizes that plaintiff and Khan were deemed "equally qualified" by the department, as if to suggest that what constitutes discriminatory treatment as between two persons of unequal qualifications assumes a benign aspect when practiced upon two persons

equally well qualified. The proposition is transparently flawed. But even conceding, arguendo, its validity, the record here inspires absolutely no confidence in either the integrity or substantiality of the departmental "finding" that plaintiff and Khan were equally qualified. It is simply not correct as stated in the majority opinion that the finding is supported by substantial evidence. The only such evidence in the record is the conclusionary opinion to that effect of Hopkins, the immediate supervisor of plaintiff and Khan. According to Parole Administrator Baer, Hopkins' opinion is based upon the two candidates' "background and . . . functioning as parole agents." From all that the record discloses, however, Hopkins' evaluation of these characteristics was totally subjective. More significantly Hopkins' subjective evaluation was expressed in response to the pointed reminder of *his* supervisor, Baer, that she preferred the appointment of Khan "because of the department's affirmative action policy, . . ."

The department asserts the right in certain circumstances to practice a form of affirmative action that confers preferential treatment upon certain classes of individuals, here females, to the exclusion and accordingly the detriment of nonpreferred classes of individuals, here males (who necessarily do not possess ethnic, racial or other characteristics entitling them to preferred treatment in their own right). Departmental policy is committed to implementation of affirmative action whenever possible. According to departmental policy, affirmative action comes into play when competing candidates otherwise eligible for promotion are of equal qualifications. The crucial determination of equal qualifications is confided to a lower level supervisor whose own interests are obviously served, to quote Hopkins, by "support [of] the department's affirmative action policy in regards to recruitment and promotions." The supervisor's determination of equal qualification is utterly standardless and subjective. Under these circumstances it is fair to ask whether it was departmental commitment to affirmative action which stimulated Hopkins' "finding" of equal qualifications rather than an objective finding of equal qualifications which triggered affirmative action.

While it may be true that there is gender imbalance represented by a preponderance of males in the department's work force, that fact confers absolutely no benefit on plaintiff and those who are dependent upon him; nor does that fact disadvantage Khan so long as she is afforded the opportunity to compete on an equal, nondiscriminatory basis for advancement and other benefits and rewards of employment. The rights of plaintiff and Khan to treatment free of sex discrimination are rights

personal to them. They are not rights accorded classes segregated by gender.

Moreover, it is important to point out that there is absolutely no evidence that plaintiff discriminated against Khan or anyone else or that Khan has herself been the victim of discrimination. In fact, the record suggests the contrary. After only 9 years as a parole agent, Khan has now achieved a more responsible and remunerative position in the department than plaintiff who has been a parole agent for 12 years. So far as plaintiff is concerned, the record suggests what the future holds for him under the department's affirmative action policy. Since the Khan promotion, 100 new names have been added to the promotional list for parole agent II. Presumably some of those are women and members of other classes accorded preferential treatment, some of whom will undoubtedly vie with plaintiff from among the first three ranks of eligibles for future promotions. Under the circumstances, then, plaintiff's prospects for advancement are anything but promising. In my view, such treatment is in clear violation of Government Code section 19702, forbidding sex discrimination in the classified service and of title VII of the federal Civil Rights Act of 1964. Not incidentally, it is also a callous and shabby way to treat a professional civil servant of long tenure who is himself blameless in the premises and is by the department's own assessment an "exceptionally good parole [agent]."

It must be acknowledged that plaintiff has virtually no prospect of gaining promotion even were he to win this lawsuit. The only relief to which he is entitled is mandate to the board to vacate its decision and implement civil service laws without discrimination. If the promotion of Khan were set aside and the matter reconsidered in a sex-neutral setting, the department, in the exercise of discretion conferred by section 19057.1, could again promote Khan over plaintiff for any reason not prohibited by law or for no reason at all. What the department may not do, however, is to display "*Discriminatory* preference for any group, minority or majority, . . ." (Italics added; *Griggs* v. *Duke Power Co., supra,* 401 U.S. at p. 431 [28 L.Ed.2d at p. 164].) The fact that plaintiff stands little chance of promotion even if he prevails here is not grounds to deny relief. The importance of the issue here involved far transcends the narrow interests of the parties to this lawsuit as it will affect virtually all appointments and promotions by the department in the future.

I would reverse the judgment and remand the proceedings to the superior court with directions to issue a writ of mandate directing the

respondent board to set aside its decision sustaining the appointment of Khan, to order the appointment vacated, and to proceed to fill the resulting vacancy in accordance with civil service rules and procedures applied without discrimination.

Appellant's petition for a hearing by the Supreme Court was denied June 8, 1979. Bird, C. J., did not participate therein.