**Jean SHERRY, Individually and as Next Friend of her infant child, Deloween Sherry, Plaintiff,**

v.

**NEW YORK STATE EDUCATION DEPARTMENT, New York State School for the Blind, and the Olean City School District, Defendants.**

**No. Civ–79–17.**

United States District Court,
W. D. New York.

Nov. 5, 1979.

---

**20.** All other relief sought by any plaintiff against any defendant will be denied.

Monroe County Legal Assistance Corp., Southern Tier Legal Services (Michael L. Hanley, Olean, N. Y., of counsel), for Plaintiff.

Robert D. Stone, Albany, N. Y., New York State Education Department (Seth Rockmuller, Buffalo, N. Y., of counsel), for State Defendants.

Shane & Franz, Olean, N. Y. (J. Michael Shane, Olean, N. Y., of counsel), for defendant Olean City School District.

1. 29 U.S.C. § 706(7).

2. 20 U.S.C. § 1401(1).

3. Prior to this time, Deloween was at the New York Institute for the Blind in the Bronx, New

CURTIN, Chief Judge.

Plaintiff's daughter, Deloween Sherry, is fourteen years old. She is legally blind and deaf and she suffers from brain damage and an emotional disorder which makes her self-abusive. There is no question that she is a handicapped individual within the meaning of the Rehabilitation Act of 1973,[1] and the Education of the Handicapped Act ["Handicapped Act"].[2] In September 1978 Deloween Sherry was enrolled at the New York State School for the Blind in Batavia, New York.[3] As a result of injuries resulting from her self-abusive behavior, she was taken back to Olean, New York on November 13, 1978 and hospitalized for medical treatment.

On November 21, 1978, Glenn E. Thompson, Superintendent of the School for the Blind, wrote a letter to Mrs. Sherry stating that the school did not have sufficient staff to supervise her daughter and that a return to the residential program at the school would be impossible until her condition changed or more staff were hired. *See* Letter of Glenn Thompson, dated November 21, 1978, attached to Plaintiff's Request for Admission. He stated that without a better student-to-staff ratio, the school could not provide the degree of supervision required to prevent Deloween from seriously hurting herself.

A meeting was held at the Olean City School District High School on November 29, 1978. The Olean City District is the school district in which Deloween Sherry resides and is a "local educational agency," as defined in 20 U.S.C. § 1401(8), which receives federal funds for educational programs. This meeting was attended by Mr. Thompson, Mrs. Sherry, representatives of the Olean City School District and its Committee on the Handicapped, a regional associate of the New York State Education Department, the school psychologist from the School for the Blind, and a children's

York, a state-supported school. She was appointed to the School for the Blind pursuant to the regulations of the New York State Education Department, 8 NYCRR § 200.6. *See* Stipulations of Counsel, ¶ 5.

consultant from the New York State Commission for the Visually Handicapped. Superintendent Thompson informed Mrs. Sherry that if she insisted on returning Deloween to the School for the Blind, then the school would suspend her and a suspension hearing would be provided upon request.

In the meantime, the Olean City School District arranged a temporary program to assist Mrs. Sherry with Deloween's behavior. On December 11 and 15, the school district's Committee on the Handicapped discussed whether the district could provide an alternative education program for her. The Committee concluded that it could not and that the most appropriate program available was at the School for the Blind. It recommended that Deloween return to the day program until such time as she could return to the residential program. The school district discontinued its program of assistance to Mrs. Sherry as of the Christmas holidays in December.

On December 27, 1978, plaintiff requested through her attorney that her daughter be reinstated in the residential program of the School for the Blind. It also was requested in the letter that she be afforded the procedural protections provided by the Handicapped Act, 20 U.S.C. § 1415. The School for the Blind, consequently, suspended Deloween, effective January 2, 1979. *See* Letter from Glenn Thompson to Mrs. Sherry, dated December 29, 1978, attached to Plaintiff's Complaint as Exhibit B. This letter informed Mrs. Sherry that the suspension would be revoked whenever "it appears to be in Deloween's and the school's best interests to do so," and that "[Y]ou and Deloween are entitled to a hearing concerning this suspension at which you have the right to representation by counsel."

On January 11, 1979, this action for injunctive and declaratory relief was commenced, seeking the reinstatement of Deloween Sherry in her educational program at the School for the Blind and the revision of defendants' procedures to comply with 20 U.S.C. § 1415. Superintendent Thompson advised Mrs. Sherry on January 19, 1979

that additional supervisory personnel had been authorized for the school and that Deloween's suspension would be revoked as of January January 22, 1979. Deloween returned to her residential program at the School for the Blind on January 23, 1979.

In addition to sketching the factual story of what occurred to Deloween Sherry, it is important to set forth certain additional circumstances. As noted above, Mr. Thompson's letter to Mrs. Sherry of January 2, 1979, suspending Deloween, stated that plaintiff was entitled to a hearing. The stipulation entered into by counsel with respect to the motions pending before the court makes reference to this offer. *See* Stipulations of Counsel Regarding Motion to Dismiss and Cross Motion for Summary Judgment, filed May 8, 1979. Paragraph 15 of the stipulation states that this hearing was offered

in order to comply with the provisions of 8 NYCRR § 200.6(a)(6) that no pupil appointed to a state operated school be suspended for disciplinary reasons without making available due process protections comparable to the provisions of Section 3214 of the NEW YORK EDUCATION LAW.

Paragraph 18 of the stipulation further states that prior to Thompson's letter of December 29, 1978 suspending Deloween, Mrs. Sherry was not advised of the availability of a hearing pursuant to the provisions of the Handicapped Act to review the actions taken by the school. Moreover, ¶ 19 details the nature of the hearing which the State of New York provides. It states:

The STATE EDUCATION DEPARTMENT does not appoint impartial hearing officers pursuant to the provisions of P.L. 94–142 [Education of the Handicapped Act] at the state agency level and does not provide for hearings before impartial hearing officers pursuant to the provisions of P.L. 94–142 to review matters related to the identification, evaluation, educational placement or provision of a free appropriate public education of students appointed to state-operated or state-supported schools other than as

would be made available at the local school district level to review the appropriateness of a placement to such a state school recommended by the local district, the decision from which would be reviewable to the State Commissioner of Education.

Finally, the defendant New York State Education Department ["Education Department"] is a "state educational agency" within the meaning of the Handicapped Act. Stipulation, ¶ 2; 20 U.S.C. § 1401(7). The School for the Blind, run directly by the Education Department, is part of that state educational agency.

The defendants have made a motion to dismiss the action. The plaintiff has made a cross-motion for summary judgment.

# DISCUSSION

## JURISDICTION AND MOOTNESS

In order to understand what follows, the court must discuss initially the statutory framework upon which plaintiff relies. The plaintiff makes a claim under The Education of the Handicapped Act ["Handicapped Act"], as amended, 20 U.S.C. § 1401–61, under § 504 of The Rehabilitation Act of 1973, 29 U.S.C. § 794, and under 42 U.S.C. § 1983 and the fourteenth amendment to the Constitution.

With respect to plaintiff's Handicapped Act claim, 20 U.S.C. § 1415 provides extensive procedural safeguards to parents and handicapped children on questions relating to the provision of a free appropriate public education as required under the Act.[4]

---

4. This section provides as follows:

§ 1415. *Procedural safeguards*
*Establishment and maintenance*

(a) Any State educational agency, any local educational agency, and any intermediate educational unit which receives assistance under this subchapter shall establish and maintain procedures in accordance with subsection (b) through subsection (e) of this section to assure that handicapped children and their parents or guardians are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies and units.

*Required procedures; hearing*

(b)(1) The procedures required by this section shall include, but shall not be limited to—

(A) an opportunity for the parents or guardian of a handicapped child to examine all relevant records with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child, and to obtain an independent educational evaluation of the child;

(B) procedures to protect the rights of the child whenever the parents or guardian of the child are not known, unavailable, or the child is a ward of the State, including the assignment of an individual (who shall not be an employee of the State educational agency, local educational agency, or intermediate educational unit involved in the education or care of the child) to act as a surrogate for the parents or guardian;

(C) written prior notice to the parents or guardian of the child whenever such agency or unit—

(i) proposes to initiate or change, or

(ii) refuses to initiate or change,

the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child;

(D) procedures designed to assure that the notice required by clause (C) fully inform the parents or guardian, in the parents' or guardian's native language, unless it clearly is not feasible to do so, of all procedures available pursuant to this section; and

(E) an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.

(2) Whenever a complaint has been received under paragraph (1) of this subsection, the parents or guardian shall have an opportunity for an impartial due process hearing which shall be conducted by the State educational agency or by the local educational agency or intermediate educational unit, as determined by State law or by the State educational agency. No hearing conducted pursuant to the requirements of this paragraph shall be conducted by an employee of such agency or unit involved in the education or care of the child.

*Review of local decision by State educational agency*

(c) If the hearing required in paragraph (2) of subsection (b) of this section is conducted by a local educational agency or an intermediate educational unit, any party aggrieved by the findings and decision rendered in such a hearing may appeal to the State educational agency which shall conduct an impartial review of such hearing. The officer conducting such review shall make an independent decision upon completion of such review.

These procedures include the requirement of written prior notice by the state or local educational agency of a proposed change in the educational placement of the child or the provision of a free appropriate education and the right to present complaints with respect to such a matter. 20 U.S.C. §. 1415(b)(1)(C) and (b)(1)(E). When such a complaint is received, the parents or guardian are entitled to an impartial due process hearing, the precise nature of which is in dispute. *Id.,* § 1415(b)(2). In addition, a party can appeal from this initial, local hearing "to the State educational agency which shall conduct an impartial review of such hearing." *Id.* § 1415(c). The final provision of § 1415, the most important to this court on the question of jurisdiction, gives a parent or guardian aggrieved by the decisions in the hearings discussed above, the right to bring a civil action in federal district court. *Id.,* §§ 1415(e)(1)–(e)(4).

■ The defendants contend that the court lacks jurisdiction over plaintiff's claim because she does not appeal from any hearing held by a state educational agency with-

in the meaning of § 1415(e)(2). This is unpersuasive. If an aggrieved party may bring an action to review the decisions of the impartial due process hearings provided for under the Handicapped Act, a person who claims that the state defendants have not even provided the impartial hearing as required by federal law *a fortiori* asserts a claim over which this court has jurisdiction. *See Stuart v. Nappi,* 443 F.Supp. 1235 (D.Conn.1978). Plaintiff is in that position and this court has jurisdiction under § 1415(e).

■ Defendants' argument that jurisdiction is lacking over plaintiff's claim under § 504 of The Rehabilitation Act is also unavailing.[5] Defendants argue that plaintiff has failed to exhaust her available administrative remedies and that the court should defer to the primary jurisdiction or expertise of the relevant agency, the Department of Health, Education and Welfare ["HEW"]. The administrative remedies which defendant refers to are set forth in regulations promulgated by HEW. These

*Enumeration of rights accorded parties to hearings*

(d) Any party to any hearing conducted pursuant to subsections (b) and (c) of this section shall be accorded (1) the right to be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of handicapped children, (2) the right to present evidence and confront, cross-examine, and compel the attendance of witnesses, (3) the right to a written or electronic verbatim record of such hearing, and (4) the right to written findings of fact and decisions (which findings and decisions shall also be transmitted to the advisory panel established pursuant to section 1413(a)(12) of this title).

*Civil action; jurisdiction*

(e)(1) A decision made in a hearing conducted pursuant to paragraph (2) of subsection (b) of this section shall be final, except that any party involved in such hearing may appeal such decision under the provisions of subsection (c) and paragraph (2) of this subsection. A decision made under subsection (c) of this section shall be final, except that any party may bring an action under paragraph (2) of this subsection.

(2) Any party aggrieved by the findings and decision made under subsection (b) of this section who does not have the right to an appeal under subsection (c) of this section,

and any party aggrieved by the findings and decision under subsection (c) of this section, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

(3) During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed.

(4) The district courts of the United States shall have jurisdiction of actions brought under this subsection without regard to the amount in controversy.

5. § 504 is set out in detail *infra.*

**1334**

are designed to ensure that recipients of federal funding do not violate the prohibition of § 504. 45 C.F.R. § 84.61 adopts the compliance procedures used to enforce Title VI of the Civil Rights Act of 1964, which are contained in 45 C.F.R. §§ 80.6–80.10 and Part 81. After investigation, discussion and hearings, the review created by these procedures can result in a cutoff of federal funds if a determination is made that a recipient is in violation, and voluntary compliance is not forthcoming. The cutoff of funding, however, is HEW's only sanction. Although this threat can act as an incentive to recipient agencies, an individual is not afforded an immediate, effective means to vindicate her own rights under § 504 through these administrative regulations. *Whitaker v. Board of Higher Education of City of New York,* 461 F.Supp. 99, 106–09 (D.Conn.1978).

Given this administrative structure, several circuit courts, including our own, have sustained the existence of a private cause of action under § 504. *Leary v. Crapsey,* 566 F.2d 863 (2d Cir. 1977); *Kampmeier v. Nyquist,* 553 F.2d 296 (2d Cir. 1977); *Lloyd v. Regional Transp. Auth.,* 548 F.2d 1277 (7th Cir. 1977); *United Handicapped Federation v. Andre,* 558 F.2d 413 (8th Cir. 1977); *see Whitaker, supra,* at 107. If a meaningful administrative enforcement mechanism existed, judicial review might be precluded until after administrative avenues had been exhausted. *Lloyd, supra,* at 1286, n.29; *Whitaker, supra,* at 107. Since such a mechanism is lacking, however, neither the exhaustion nor the primary jurisdiction doctrine applies. *Lloyd, supra,* at 1287; *Whitaker, supra,* at 107–09. The court, therefore, has jurisdiction over plaintiff's § 504 claim under 28 U.S.C. § 1343.

 The final jurisdictional objection of defendants can be disposed of without difficulty. They argue that the court lacks jurisdiction over plaintiff's 42 U.S.C. § 1983 claim that her due process rights under the fourteenth amendment were violated. 28 U.S.C. § 1343(3) confers jurisdiction to entertain the constitutional claim if it is of sufficient substance. *Hagans v. Lavine,*

415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Without resolving the merits, plaintiff's claim is not a frivolous one and there can be no question that the court has jurisdiction.

In addition to jurisdictional questions, the court is faced with a question of mootness. At the time this action was commenced, Deloween Sherry was suspended and not in her residential program at the School for the Blind. Part of the relief which plaintiff seeks is an injunction ordering: (1) Deloween's reinstatement at the school and the provision of the necessary educational and related services, and (2) her local residential school district to provide her an appropriate public education until that reinstatement. Since this action was commenced, Deloween was reinstated at the School for the Blind and the defendants contend that the action is now moot.

 An issue becomes moot and no longer justiciable when, as a result of intervening circumstances, there are no longer adverse parties with sufficient legal interests to maintain the litigation. *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 122, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974); *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). Although a determination of such a question requires an analysis of the Article III principles which mandate a "case or controversy," it also requires a highly individualized appraisal of each case. Moreover, the performance of the particular act sought to be enjoined may moot the issue of an injunction, but where there is a likelihood that the act complained of will be repeated, the issues remain justiciable and a declaratory judgment may be rendered to define the rights and obligations of the parties. 6A Moore's Federal Practice, ¶ 57.-13; *see United States v. Phosphate Export Assn.,* 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968). Even if later events have reduced the practical importance of a case to the parties, the question is whether the allegedly wrongful behavior could not reasonably be expected to recur. *St. Paul Fire & Marine Insurance Co. v. Barry,* 438

U.S. 531, 538, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978); *Phosphate Export Assn., supra,* at 203, 89 S.Ct. 361; *see United States v. W. T. Grant Co.,* 345 U.S. 629, 632–33, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).

■ In this case, plaintiff's complaint requests not only injunctive relief but a declaratory judgment that defendants' failure to comply with the requirements of 20 U.S.C. § 1415 was unlawful and that her suspension violated the Handicapped Act, § 504 of The Rehabilitation Act, and the Due Process and Equal Protection clauses of the fourteenth amendment. She argues that despite her reinstatement, a great likelihood exists that the situation which triggered this action could repeat itself. The court agrees with respect to the state defendants. The review procedures about which the plaintiff and the defendants disagree are still those which the defendants utilize. From the very beginning, the plaintiff has sought not only an injunction but also declaratory relief that the state's procedures do not meet the requirements of 20 U.S.C. § 1415. As the Supreme Court has stated repeatedly, in such a situation the district court has " 'the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction.' *Zwickler v. Koota,* 389 U.S. 241, 254, [88 S.Ct. 391, 19 L.Ed.2d 444] (1967); *Roe v. Wade,* 410 U.S. 113, 166, [93 S.Ct. 705, 35 L.Ed.2d 147] (1973); *Steffel v. Thompson,* 415 U.S. 452, 468–469 [94 S.Ct. 1209, 39 L.Ed.2d 505] (1974)." *Super Tire, supra,* at 121, 94 S.Ct. at 1698. The immediate relief of reinstatement has been obtained. But, given Deloween's condition, there is a significant likelihood that the problem could repeat itself and the right to review, if any, would again become an issue. Given these circumstances, plaintiff has a continuing interest in having the court define the obligations and rights of the parties.

■ With respect to the defendant Olean City School District, plaintiff's single demand for relief is for an injunction requiring it to provide an appropriate education and services until Deloween is reinstated at the School for the Blind. This reinstatement has occurred. Plaintiff's interest and demands for relief now are directed solely toward the state defendants and their procedures. Plaintiff's claim against the Olean City School District, therefore, is moot.[6]

*MERITS*

■ As sketched out briefly above, the Handicapped Act and its amendments are designed to assure that all handicapped children have available to them a free appropriate public education and related services designed to meet their unique needs. 20 U.S.C. § 1415 guarantees that these children and their parents or guardians are afforded certain procedural rights relating to this education. The plaintiff contends that the defendants: (1) failed to provide her with written prior notice of a change in Deloween's "educational placement," pursuant to § 1415(b)(1)(C); (2) failed to afford her the opportunity for an impartial due process hearing conducted by someone who is not an employee of the Education Department, pursuant to § 1415(c); and (3) failed to allow Deloween to remain in her current educational placement pending the administrative hearing and determination, pursuant to § 1415(e)(3). Plaintiff recognizes the need for an agency such as the School for the Blind to be able to suspend someone like Deloween on an emergency, temporary basis. Plaintiff argues, however, that defendants' actions resulted in more than a temporary suspension, and that

6. As evidenced by the affidavit of Martin Welch, Superintendent of the Olean City School District, considerable confusion exists as to the exact scope of the duty under the Handicapped Act of a local school district when a handicapped child has been appointed to a state school. For example, Mr. Welch states that the Education Department has promulgated no guidelines as to whether it is the duty of the "local educational agency" or the state agency to provide notice and a hearing when a parent like Mrs. Sherry has a complaint about placement. When, as here, the child has been in a school directly run by the State Education Department, it would seem that the responsibility lies with the state agency.

in fact a change in Deloween's educational placement occurred without her parents being afforded an opportunity for an impartial due process hearing and without Deloween remaining in the School for the Blind pending its outcome. On December 27, 1978, Mrs. Sherry demanded that these procedural safeguards be provided. Defendants did not do so and, instead, formally suspended Deloween for an indefinite period.

The defendants argue that no change in Deloween's educational placement occurred within the meaning of the Handicapped Act; thus, these procedural safeguards are not technically applicable. Defendants rely on a regulation promulgated under the Handicapped Act by HEW, codified as 45 C.F.R. § 121 a.513. This regulation reiterates the dictate of 20 U.S.C. § 1415(e)(3) that, during the pendency of any administrative or judicial proceeding regarding a complaint, the child involved must remain in her present educational placement unless the agency and the child's parents agree otherwise. The comment to this regulation

includes the following statement: "While the placement may not be changed, this does not preclude a school from using its normal procedures for dealing with children who are endangering themselves or others." Defendants contend that the suspension of Deloween was valid because suspension is the school's normal procedure for dealing with a child who is a danger to herself.

Defendants point to § 200.6(a)(6) of the Regulations of the Commissioner of Education of the State of New York, which incorporates procedures comparable to those set forth in § 3214 of the New York State Education Law.[7] Section 3214(3) authorizes suspension of a pupil whose physical or mental condition endangers the health and safety of himself or others; a right to a due process hearing where suspension exceeds five days is included. Defendants contend that plaintiff chose not to avail herself of the school's offer of such a hearing on December 29, 1978, and that the specific procedures provided for in 20 U.S.C. § 1415 were not required. As a final argument, defend-

---

**7.** N.Y.Ed.Law § 3214 provides in relevant part:

 3. Suspension of a pupil. a. The board of education, board of trustees or sole trustee, the superintendent of schools, or district superintendent of schools may suspend the following pupils from required attendance upon instruction:

 \* \* \* \* \* \*

 (2) A pupil whose physical or mental condition endangers the health, safety, or morals of himself or of other pupils;

 \* \* \* \* \* \*

 (c) No pupil may be suspended for a period in excess of five school days unless such pupil and the person in parental relation to such pupil shall have had an opportunity for a fair hearing, upon reasonable notice, at which such pupil shall have the right of representation by counsel, with the right to question witnesses against such pupil and to present witnesses and other evidence on his behalf. Where a pupil has been suspended in accordance with this section by a superintendent of schools, district superintendent of schools or community superintendent, the superintendent shall personally hear and determine the proceeding or may, in his discretion, designate a hearing officer to conduct the hearing. The hearing officer shall be authorized to administer oaths and to issue subpoenas in conjunction with the proceeding before him. A record of the hearing shall be maintained, but no stenographic transcript

shall be required and a tape recording shall be deemed a satisfactory record. The hearing officer shall make findings of fact and recommendations as to the appropriate measure of discipline to the superintendent. The report of the hearing officer shall be advisory only, and the superintendent may accept all or any part thereof. An appeal will lie from the decision of the superintendent to the board of education who shall make its decision solely upon the record before it. The board may adopt in whole or in part the decision of the superintendent of schools.

 Where a pupil has been suspended in accordance with this section by a board of education, the board may in its discretion hear and determine the proceeding or appoint a hearing officer who shall have the same powers and duties with respect to the board that a hearing officer has with respect to a superintendent where the suspension was ordered by him. The findings and recommendations of the hearing officer conducting the proceeding shall be advisory and subject to final action by the board of education, each member of which shall before voting review the testimony and acquaint himself with the evidence in the case. The board may reject, confirm or modify the conclusions of the hearing officer.

(McKinney's, Pocket Part for 1978–79).

ants assert that their procedures for administrative review substantially comply with what is required by the Handicapped Act. "Certain adjustments are necessary due to the role of the State Commissioner of Education in all educational matters within the state." Defendants' Memorandum, at 14.

Defendants' arguments are not persuasive. As plaintiff concedes, and as HEW has suggested in its interpretation of § 1415(e)(3), it is necessary that an agency like the School for the Blind have the right to suspend a handicapped student who is a danger to herself on an emergency basis. Under a fair reading of § 1415, one can appreciate that during Deloween's hospitalization and perhaps for a short period of time thereafter, no change in her educational placement occurred by reason of the suspension. Thus, no agency hearing or other safeguards under the Handicapped Act were required. On November 21, 1978, eight days after Deloween was hospitalized, Superintendent Thompson notified Mrs. Sherry by letter that it was in the best interests of Deloween that she not reenter the School for the Blind without first meeting with Mrs. Sherry. This letter strongly suggests that the school recognized the necessarily temporary nature of Deloween's absence. At least by December 27, 1978, however, the time Mrs. Sherry requested reinstatement of Deloween at the School for the Blind and an impartial hearing, it is clear that Deloween's educational placement had changed. Deloween was no longer in the school and its residential program and the temporary program of assistance set up by the Olean district to help Mrs. Sherry with Deloween's behavior had terminated. Superintendent Thompson's letter of December 29, 1979, formally suspending Deloween from the School for the Blind, made certain that she was no longer placed at this school, and this suspension was for an indefinite period. In the ordinary sense of the word, a significant change had occurred in her situation. The only reasonable conclusion is that her educational placement had been changed within the meaning of § 1415. The comment to 45 C.F.R. § 121a.513, providing for the use of normal state procedures where a child is a danger to herself, may permit a temporary suspension. It does not permit defendants, however, to ignore the procedural safeguards of § 1415 when that temporary, emergency response to a handicapped student's behavior becomes a change in her educational placement. *See Stuart v. Nappi*, 443 F.Supp. 1235, 1240–43 (D.Conn.1978). Defendants' argument that their procedural safeguards substantially comply with § 1415 is of no help. In the first place, § 3214(3) and § 1415 differ in at least one important respect. As defendants have stipulated, the "due process hearing" which they provide, and offered to plaintiff without success, is not conducted by an impartial hearing officer, that is, a hearing officer not employed by the educational agency providing the appropriate education. Defendants' proffered explanation for this difference, that the decision of an impartial hearing officer would be inconsistent with the Commissioner of Education's statutory role as the highest authority on educational matters, is unsatisfactory. Moreover, unlike § 1415, there is no provision in § 3214 requiring the agency to allow a child to remain in place pending resolution of a complaint. Second, the substantial compliance term of § 1416 refers to a state's compliance for purposes of receiving federal funding. *See* §§ 1416 and 1412(2). The defendants' argument is not without some merit. The language of § 1415, however, which provides that a state plan "shall include, but not be limited to, [the following procedural safeguards]," strongly suggests that a hearing before an impartial hearing officer is the minimum for compliance with the procedural guarantees of § 1415. Moreover, the provision in § 1415(e) for a private cause of action indicates that the procedural guarantees provide a separate, independent enforcement mechanism, distinct from the cutoff of federal funds. Failure to provide a major component of that mechanism, such as an impartial hearing, cannot be circumvented by claiming substantial compliance.

To sum up this discussion, the defendants' failure to provide plaintiff with the proce-

dural guarantees of the Handicapped Act, including their failure to maintain her in her then-current educational placement and failure to provide a hearing before an impartial hearing officer, violated 20 U.S.C. § 1415.[8] Pursuant to authority granted under 28 U.S.C. § 2202, the defendants are directed to establish procedures which comport with § 1415.

Plaintiff also requests a declaratory judgment that defendants' suspension of Deloween Sherry violated § 504 of the Rehabilitation Act of 1973 and the fourteenth amendment. Section 504 provides, in relevant part:

> No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. . . .

29 U.S.C. § 794. Defendants argue that the suspension of Deloween Sherry was not unlawful because the suspension was not solely by reason of her handicap. Rather, suspension, pending a satisfactory resolution of how to cope with her problem, was necessary because she posed a danger to herself by virtue of her self-abusive character. This reason is said to constitute a substantial justification for Deloween's suspension from the School for the Blind.

Plaintiff contends that the HEW regulations effectuating § 504 provide a yardstick for measuring compliance with that section and that defendants have failed to satisfy their requirements. These regulation are found in 45 C.F.R. Part 84. Plaintiff specifically points to 45 C.F.R. § 84.33 which provides, in relevant part:

> (a) *General.* A recipient that operates a public elementary or secondary education program shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap.

> (b) *Appropriate education.* (1) For the purpose of this subpart, the provision of an appropriate education is the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of §§ 84.34, 84.35, and 84.36.

Plaintiff argues that the sole reason for Deloween's suspension from her educational program was the failure of defendants to provide "related aids and services" in the form of adequate supervision, thus denying her access to a program designed to meet her needs.

At first blush, defendants' argument is persuasive. Deloween Sherry was sent home from the School for the Blind, and subsequently suspended, because she was a danger to herself without the supervisory staff which the school did not have. Therefore, she was not excluded from the federally-subsidized educational program solely by reason of her handicap within the meaning of § 504. This initial impression needs further exploration, however.

The HEW regulations require a recipient agency to provide an appropriate education to all children regardless of the nature or severity of the child's handicaps.

---

**8.** Plaintiff also complains of defendants' failure to provide notice within the meaning of § 1415. Under the factual circumstances of this case, that issue is not paramount. § 1415 certainly requires notice prior to any proposed change in a handicapped student's educational placement. § 1415(b)(1)(C). *Defendants should recognize this duty.* In this case, however, the particular change in placement was brought about by an emergency and, in light of the offer of a hearing to Mrs. Sherry, some notice was given.

45 C.F.R. § 84.33(a). This education includes the provision of "related aids and services" designed to meet the individual needs of handicapped persons. *Id.*, at § 84.33(b). These regulations are entitled to considerable deference by the court. In this case, they indicate that a recipient agency has an obligation to provide the supervisory staff necessary to allow a handicapped student to benefit from the services of that agency. Deloween Sherry certainly is seriously handicapped; not only is she deaf and blind, but she suffers from brain damage and an emotional disorder which makes her self-abusive. The regulations properly mandate, though, that regardless of the severity of a child's handicap, an appropriate education be provided. That education must encompass, as a related aid and service, the supervisory staff necessary to make that education possible. As evidenced by the reinstatement of Deloween when more staff were hired at the school, the reason for her suspension was the failure of the School for the Blind to provide the necessary related services.

 In reaching this conclusion, the court does not question the defendants' motivation; it is clear that they were concerned for her safety. Nonetheless, this cannot be a substantial justification when the concern could have been alleviated or eliminated if the defendants had complied with their duty to provide the service of supervision as part of her appropriate educational program. A defense of lack of staff cannot justify a default by defendants in the provision of an appropriate education to the plaintiff. *See Lora v. Board of Education of City of New York*, 456 F.Supp. 1211, 1292-93 (S.D.N.Y.1978). The suspension of Deloween Sherry "until it appears to be in Deloween's and the School's best interests to [revoke it]" was unlawful within the meaning of § 504. We need not reach the question of whether the exclusion violated her rights to equal protection and due process under the fourteenth amendment.

In conclusion, defendants' motion to dismiss under Rule 12 is denied. Plaintiff's motion for summary judgment under Rule 56 is granted insofar as the court declares that defendants' failure to provide the procedural safeguards of 20 U.S.C. § 1415 to plaintiff was unlawful and that their indefinite suspension of Deloween Sherry was an unlawful exclusion within the meaning of § 504 of the Rehabilitation Act. In conjunction with this declaratory judgment, the defendants are directed to establish procedures which comport with § 1415.

So ordered.