Ty Wesley **NORTH** et al., **Plaintiffs,**

v.

**DISTRICT OF COLUMBIA BOARD OF EDUCATION et al., Defendants.**

Civ. A. No. 79–0127.

United States District Court, District of Columbia, Civil Division.

April 10, 1979.

---

J. Dennis Doyle, Urban Law Institute, Washington, D. C., for plaintiff.

Hugh O. Stevenson, Asst. Corp. Counsel, Sp. Litigation Division, Washington, D. C., for defendants.

### MEMORANDUM AND ORDER

HAROLD H. GREENE, District Judge.

Plaintiff Ty Wesley North[1] is a multiply handicapped sixteen-year old boy who is diagnosed as being epileptic with grand

1. Ty Wesley North will generally be referred to hereinafter as the plaintiff, although the action was brought both on his behalf and on behalf of his parents.

mal, petit mal, and drop seizures, emotionally disturbed, and learning disabled. On November 30, 1977, an evaluation and assessment of the plaintiff for purposes of determining an appropriate educational placement for him was conducted pursuant to federal and District of Columbia law by a placement committee of the Sharpe Health School functioning under the auspices of the defendants. At that time the committee recommended that the appropriate placement would be a residential treatment facility which would provide medical supervision, special education, and psychological support.[2] However, defendants took no steps to arrange such a placement for plaintiff until ordered to do so three months later, on February 23, 1978, by a hearing officer, sitting pursuant to the requirements of *Mills v. Board of Education of D.C.*, 348 F.Supp. 866 (D.D.C.1972). Ruling that the plaintiff was being denied an appropriate educational placement because of the failure of defendants to act, the hearing officer ordered them to provide a placement that was consistent with their own recommendations and reports. In April, 1978, plaintiff began school at the Elwyn Institute in Pennsylvania, a private residential treatment facility which contracts with defendants to provide special education to District of Columbia children sent there.

Problems with this placement began to develop in June of that year. Ty North was not cooperating with the staff or the students and, additionally, he was experiencing difficulties with taking his necessary medication. Early in December, his parents were notified by the Elwyn Institute that he was to be discharged because the school could no longer deal with his emotional and other problems. Counsel for plaintiffs thereupon requested that defendants provide Ty with an emergency residential placement because his parents, too, were unable to cope with his medical and emotional problems. However, defendants, for various reasons, effected no alternate placement.[3]

On December 21, officials of Elwyn attempted to leave Ty with his parents, but when the Norths refused to accept him, he was returned to Elwyn. A second attempt to deliver Ty to his parents was initiated on January 8, 1979. This time, after yet another refusal by his parents, Ty was left at an office of the Department of Human Resources from where he was taken to the Area C Mental Health Unit at D.C. General Hospital.

On January 11, plaintiff and his parents initiated this action seeking declaratory and injunctive relief under the Education For All Handicapped Children Act, 20 U.S.C. § 1401 et seq.; the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.; the decision of Judge Waddy in *Mills supra*; the Rules of the D.C. Board of Education, D.C. Register, Oct. 7, 1977, § 457, p. 2815–17; and the Fifth Amendment to the U.S. Constitution. Plaintiffs' request for a temporary restraining order was denied on January 15, 1979, on account of their failure to demonstrate irreparable injury. Plaintiff had by that time been moved to the Dominion Psychiatric Treatment Center in Falls Church, Virginia, a residential treatment facility offering therapy and education as well as attention to plaintiff's medical problems, and he was therefore not in immediate jeopardy. By order of Judge Joseph M. F. Ryan, Jr., of the D.C. Superior Court, sitting in the Juvenile Branch, plaintiff will remain at Dominion pending the outcome of a neglect action initiated by the Corporation Counsel in that Branch after the action here had been filed. The neglect proceeding has been postponed several times, apparently by agreement of the parties, to await the out-

---

2. Residential treatment may be defined as a twenty-four hour setting providing shelter, food, special education, and related services. It is distinguished from a day care program which typically operates only from 9:00 a. m. to 3:00 p. m.

3. The saga of the unsuccessful efforts of plaintiffs' counsel to secure action from the District of Columbia agencies is long and tortured. All during December, counsel contacted various officials of the D.C. Board of Education and the D.C. Department of Human Resources, each of whom disclaimed responsibility and failed to achieve an appropriate placement.

come of this suit, and it is presently set to be heard late in April.

## I

The issue in this Court is whether plaintiff needs to be placed in a residential facility and, if so, whether the D.C. Board of Education is responsible for providing that placement. None of the evidence in this case indicates, and indeed none of the parties asserts, that plaintiff does not need a residential placement. All of his psychological evaluations, as well as the determination made by the Board's hearing examiner, demonstrate that plaintiff has severe emotional and educational problems which can appropriately be dealt with only by intensive treatment in a residential setting.

The defendants contend, however, that while plaintiff's *emotional* difficulties demand this residential treatment, his *educational* needs can be met by attendance at the Powell Annex, a special education day program. They argue further that plaintiff's emotional well-being is the responsibility of the D.C. Department of Human Resources and that they, the Board of Education, can adequately discharge their duty to provide for his education by a less restrictive placement,[4] that is, by a day program. Therefore, defendants suggest, the appropriate procedure to meet plaintiff's admitted need for residential care is to pursue the neglect action initiated by the Corporation Counsel in the Superior Court, adjudicate his parents as neglectful, and place Ty in the custody of the Department of Human Resources.

It is clear that under federal law defendants bear the responsibility for providing plaintiff with residential placement where such placement is appropriate. The Education for All Handicapped Children Act, specifically 20 U.S.C. § 1412(6), vests them with responsibility for administering all educational programs for handicapped children within their jurisdiction, and the regu-

lations, 45 C.F.R. 121a.302, specify that when residential care is required, it must be at no cost to the parents. Defendants' obligations in that regard are also codified in the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., and the regulations promulgated thereunder, 45 C.F.R. 84 et seq., which provide many of the same substantive and procedural rights as are found in the Education for All Handicapped Children Act. Once again, defendants' responsibility for providing residential placement is clear, for section 84.33(c)(3) of 45 C.F.R. provides that

> If placement in a public or private residential program is necessary to provide a free and appropriate public education to a handicapped person because of his or her handicap, the program, including nonmedical care and room and board, shall be provided at no cost to the person or his or her parents or guardian.

See also, and especially the comment to 45 C.F.R. 121a.600, the regulation which implements section 1412(6), which states

> This provision is included specifically to assure a single line of responsibility with regard to the education of handicapped children, and to assure that in the implementation of all provisions of this Act and in carrying out the right to education for handicapped children, the State educational agency shall be the responsible agency * * *
>
> Without this requirement, there is an abdication of responsibility for the education of handicapped children. Presently, in many States, responsibility is divided, depending upon the age of the handicapped child, sources of funding, and type of services delivered. While the Committee understands that different agencies may, in fact, deliver services, the responsibility must remain in a central agency overseeing the education of handicapped children, so that failure to deliver services or the violation of the rights of handi-

---

**4.** Both the Education for All Handicapped Children Act and the *Mills* decision contemplate that the children be educated in the "least restrictive environment." 20 U.S.C. § 1412(5)(B);

*Mills v. Board of Education, supra*, 348 F.Supp. at 880; *Stuart v. Nappi*, 443 F.Supp. 1235, 1242 (D.Conn.1978).

capped children is squarely the responsibility of one agency.

■ These statutory and regulatory provisions, coupled with Judge Waddy's order to the D.C. Board of Education in *Mills* that no child shall be excluded from a regular public school assignment unless such child is provided "adequate alternative educational services suited to the child's needs, which may include special education or tuition grants," 348 F.Supp. at 878, clearly place responsibility for providing residential educational services to plaintiff on these defendants.[5]

## II

■ Defendants vigorously argue that plaintiff's problems are emotional, social, and otherwise non-educational, and that they should not be saddled with the responsibility of providing him with living arrangements not strictly of an educational nature. That, it is said, is the responsibility of the parents, and if the parents are unable or unwilling to discharge that responsibility, it vests in the social service agencies, not the Board of Education. Specifically, defendants suggest that resort be had to such alternate commitment schemes as those set forth in D.C. Code § 16–2301 et seq., pertaining to children who are delinquent, neglected, or in need of supervision.

As indicated *supra*, under applicable laws and regulations the educational authorities have the clear duty to place a school-age child in a residential facility when that is necessary in order to provide him with the appropriate educational program. Notwithstanding these relatively unambiguous statutory and regulatory directives, the Court is reluctant to hold flatly that in every situation where emotional or other medical problems impact upon educational needs, the normal *parens patriae* role of the local authorities is displaced by federal law. As a general proposition, it would seem preferable to have issues of the type involved in this case attended to by social service agencies rather than by the school authorities, and litigated in state and local tribunals rather than in the federal courts. It may well be that these philosophical considerations of federalism and of social service expertise are overcome by the explicit statutory and regulatory provisions cited above, and that therefore these issues must always be shifted to the federal forum. However, for the reasons discussed below, it is not necessary in this case to decide these ultimate issues because on the specific facts here the District of Columbia neglect proceeding is inappropriate, and the federal statutes must therefore be invoked.

## III

Dr. Martin Stein, the medical director of the Dominion Center where plaintiff is temporarily placed, testified that a neglect proceeding in Superior Court would itself have a devastating impact on plaintiff's course of treatment. Ty's emotional problems have been significantly exacerbated by his perception that he has been abandoned by his parents, and the unrefuted medical opinion is that the stigma of having his parents adjudicated neglectful and unwilling to care for him would seriously cripple efforts to deal with his problems and to reunite his family. Inasmuch as the price of proceeding through the local procedures is thus unacceptably high, the only available alternatives are placement and financial support for that placement through plaintiff's parents or through the Board of Education.

The daily cost of keeping plaintiff at his present temporary placement is approximately $160. At present, some of that cost is covered by the parents' insurance and the remainder is borne by the Department of Human Resources. Unless plaintiff is adjudicated neglected and placed in the permanent custody of the Department of Human Resources, that agency will not, and it

---

5. For a recent instance where the D.C. Board of Education was ordered to provide a residential placement for a child pursuant to the Education for All Handicapped Children Act and the *Mills* decision, see *Ladson v. Board of Education of D.C.*, CA 78–2263, Memorandum Order of Judge June Green, dated March 12, 1979.

claims that under federal matching grant legislation it cannot, continue its portion of the payments. Thus, defendants would have plaintiffs face the Hobson's choice of having Ty released from the Dominion Center for lack of funds,[6] or suffer the emotional damage that Dr. Stein testified will accompany a neglect finding.[7] Either choice would cause irreparable injury to plaintiffs.

It may be possible in some situations to ascertain and determine whether the social, emotional, medical, or educational problems are dominant and to assign responsibility for placement and treatment to the agency operating in the area of that problem. In this case, all of these needs are so intimately intertwined that realistically it is not possible for the Court to perform the Solomon-like task of separating them. Since, as noted *supra*, relegation of the plaintiffs to the purely social recourse, *i. e.*, the neglect procedure, is fraught with peril to the child and the family, use of the federal educational laws and placement pursuant to those laws is the only legally available alternative and is clearly required.

For these reasons, the Court finds that plaintiff's federal rights to appropriate educational placement are properly invoked, and that the Court should exercise its legal and equitable jurisdiction, and it will therefore grant the relief requested by plaintiffs.[8]

**IV**

As pointed out above, the emotional needs of this plaintiff are closely interwoven with his educational needs. It is unfortunate that the two agencies of the District having responsibility for plaintiff's care are seeking to shift the responsibility to each other—the Board of Education claiming that plaintiff's problems are emotional, and the Department of Human Resources asserting that they are educational and further that it will not undertake to tend to his treatment without a formal finding that the parents have neglected him. It may be that the fault lies with the antiquated state of the District of Columbia laws; but in any event, it is unfortunate that the assistance of this Court had to be invoked under federal statutes to resolve what essentially are internal bureaucratic disputes. Since this assistance has been sought, the Court must adjudicate plaintiff's rights and thereby resolve that which the several District of Columbia agencies have been unable or unwilling to decide among themselves; that is, who among them shall pay for plaintiff's residential treatment—treatment which all affected departments appear to agree is both necessary and a responsibility of the District of Columbia government.

The Court finds that plaintiff is about to suffer irreparable injury, that he has demonstrated a likelihood of success on the merits of this litigation, and that there

---

**6.** Ty's parents are apparently unable to pay the costs.

**7.** The suggestion of neglect is particularly ironic considering that a portion of Ty's expenses are now being covered by his parents' insurance.

**8.** Defendants claim that plaintiffs should be prohibited from pursuing the action because they have failed to exhaust their administrative remedies. In the first place, it is unclear to what remedies defendants refer since an administrative determination was previously made that plaintiff needs residential treatment. The issue in dispute is not whether he needs such treatment but rather who should provide it. A further review of plaintiff's needs seems superfluous in light of the ample record of psychological, emotional, and educational eval-

uations. Moreover, there was no practical opportunity for pursuing and exhausting administrative remedies. Ty North arrived in the District of Columbia from Elwyn on January 8, 1979. He was then placed in Area C Mental Health Unit, and further pursuit of administrative procedures—which had proved fruitless for several months—would have entailed his continued confinement in that unsuitable facility. It may be worth noting in this connection that in the course of plaintiffs' efforts to secure action from the defendants, the latter appear to have committed wholesale violations of plaintiff's procedural rights. See, *e. g.*, 20 U.S.C. § 1415(b)(1)(C); 45 C.F.R. 121a.505; 45 C.F.R. 121a.347; 45 C.F.R. 84.36; *Mills v. Board of Education, supra*, 348 F.Supp. at 880.

**142**

is no countervailing burden on injury to either the defendants or the public interest. Accordingly, a preliminary injunction will issue.

Upon consideration of plaintiffs' motion for a preliminary injunction, the opposition papers filed by defendants, the hearings held, and the entire record, it is this 9th day of April, 1979, hereby

DECLARED That defendants have the legal responsibility to provide plaintiff Ty Wesley North with an appropriate residential academic program under 20 U.S.C. § 1401 et seq., 29 U.S.C. § 701, and *Mills v. Board of Education*, 348 F.Supp. 866 (D.C. D.C.1972), and it is

ORDERED That pending further order of the Court defendants are hereby restrained from further denying plaintiff Ty Wesley North a free appropriate education in violation of 20 U.S.C. § 1401 et seq., 29 U.S.C. § 701 et seq., and *Mills v. Board of Education, supra*, by refusing to place him in a residential academic program with necessary psychiatric, psychological and medical support and supervision; and it is further

ORDERED That until further order of the Court defendants, or their appropriate agents, shall undertake the responsibility, financial and otherwise, for the placement of plaintiff Ty North at the Dominion Psychiatric Treatment Center, and it is further

ORDERED That this Order is contingent upon the posting by plaintiffs of a bond in the amount of $500.00.