Michael and Jacqueline CORBETT for Jack M. CORBETT, Plaintiffs,

v.

REGIONAL CENTER FOR THE EAST BAY, INC., and Linda McMahon, Director of the Department of Social Services, Defendants.

No. C–87–5322 SAW.

United States District Court, N.D. California.

Jan. 15, 1988.

Gwilliam & Ivary, Oakland, Cal., Fine & Ambrogne, Boston, Mass., for plaintiffs.

Bette B. Epstein, Crosby, Heafey, Roach & May, Oakland, Cal., John K. Van de Kamp, Atty. Gen. of State of Cal., Willie M.J. Curtis, Deputy Atty. Gen., San Francisco, Cal., Elisabeth C. Brandt, Dept. of Justice, Sacramento, Cal., for defendants.

## MEMORANDUM AND ORDER

WEIGEL, District Judge.

### I. Introduction.

Plaintiffs Michael and Jacqueline Corbett are the parents of Jack M. Corbett, who is seventeen years old and severely handicapped. For the past two and one-half years, he has lived at the Behavior Research Institute of California (BRI), a residential facility which provides a highly structured behavior modification program for severely handicapped young men and women.

Plaintiffs complain that defendants Regional Center for the East Bay (RCEB), a non-profit community agency, and the Department of Social Services (DSS), a California state agency, unilaterally changed the educational program and residential placement of their handicapped son by terminating his funding at BRI, in violation of the Education for All Handicapped Children Act, 20 U.S.C. § 1415. Plaintiffs move for a preliminary injunction restraining defendants from changing the educational program, residential placement, and funding of Jack Corbett at BRI pending resolution of the plaintiffs' state administrative appeal. For the reasons outlined

1. The Court takes judicial notice of the California statutes relevant to the issues in this case. *Saffold v. Mc-Graw Edison Co.,* 566 F.2d 621, 623 (8th Cir.1977) (Federal Courts must take

below, the Court denies the plaintiffs' motion.

### II. Background.

Jack Corbett has been diagnosed as having moderate mental retardation and infantile autism. Manifestations of his autism include severe self-abusive behavior, which involves hitting himself on the body and head and episodes of screaming in loud tones for long periods of time. When about seven years old, he was enrolled in a special education day program of the Richmond Unified School District. In October, 1984, he was removed from this program because his teacher could not control his self-abusive behavior and his yelling was too disruptive. From October, 1984 to April, 1985, Jack lived at home, receiving neither an educational nor a behavioral program. His behavior problems worsened to the point where his parents could not control him.

Defendant RCEB, the non-profit community agency, was created pursuant to California Welfare and Institutions Code §§ 4620 *et seq.*[1] Agencies such as RCEB coordinate and provide services in the community for developmentally disabled persons. *Id.* at § 4620. Among the services that regional centers are authorized to provide are placements in out-of-home, residential facilities. *Id.* at § 4648(b). In December, 1984, an RCEB evaluation found Jack to be "developmentally disabled" within the meaning of the California statute and therefore eligible for the services RCEB provides. RCEB concluded that Jack required a program of behavior modification and of residential placement. In April, 1985, he was placed at BRI. BRI is licensed as a community care facility by the DSS under California Health and Safety Code §§ 1500 *et seq.* RCEB funded Jack's residential program at BRI, while the Los Angeles Unified School District paid his educational costs.

judicial notice of the statutory and common law of any state of the union without pleading or proof).

It is uncontroverted that Jack's periods of self-abuse have not ceased while he has been at BRI. A tragic side-effect has been considerable injury to his eyesight. As a result of a cataract and detached retina, he has lost all vision in his right eye. A partially detached retina and small cataract were also detected in his left eye. On September 25, 1987, surgery was performed on the left eye to repair the retina and reduce the risk of further damage from self-abusive behavior. Dr. Edgar Thomas, the specialist who performed the surgery, indicated that the operation was successful in reducing the risk of further permanent damage to the eye from self-abuse.

On October 2, 1987, RCEB informed Jack's parents by letter of RCEB's recommendation that Jack not return to BRI. RCEB concluded that there was an immediate danger to his health, safety, and well-being from continued placement there. RCEB based this conclusion on a finding that BRI had not demonstrated it could prevent further self-injury with their behavior program and that it had used unauthorized restraints on Jack. RCEB was particularly concerned with the dangers to Jack's eyesight from his continued face-slapping behavior. Citing authority under the California Administrative Code, title 17, § 56557(a)(3) to remove a client from a facility without regard to consent where health or safety is threatened, RCEB terminated Jack's placement and funding at BRI as of October 2, 1987. As a result of the decision by RCEB, defendant DSS wrote to BRI and requested that Jack be relocated within seventy-two hours.

As an alternative to BRI, RCEB proposed a temporary in-home support program. This program contemplated placement in a non-public, special education day school. In addition, Jack would receive extensive supervision at home by a trained staff person from a licensed behavior management program. RCEB also indicated that they would continue to seek another appropriate out-of-home, residential placement for Jack.

On October 12, 1987, plaintiffs filed a state administrative appeal of RCEB's decision. RCEB refused to continue Jack's placement and funding at BRI pending resolution of the appeal because of its finding of danger to his health, safety and well-being there. In addition, DSS began assessing BRI a fine of fifty dollars per day from October 13, 1987, in part for BRI's failure to remove Jack from the program. Nonetheless, Jack's parents continued to keep him at BRI after the October 2, 1987 termination decision.

On October 23, 1987, plaintiffs requested this Court to temporarily restrain the defendants from terminating Jack's residential placement and funding at BRI pending a hearing on their application for a preliminary injunction. After hearing, the Court declined to issue a Temporary Restraining Order on the condition that the defendants agree to maintain Jack in his current placement at BRI pending further consideration and order of the Court. Accordingly, the parties entered into a stipulation maintaining the status quo in the case as of October 1, 1987. A hearing on the plaintiffs' application for a preliminary injunction was held on November 9, 1987, after which the defendants were permitted to file supplemental briefs and the plaintiffs given leave to reply.

III. *Discussion.*

Two considerations govern in determining whether a preliminary injunction should issue against RCEB and DSS. First, the Court must have jurisdiction over the defendants under the provisions of the Education for All Handicapped Children Act (EAHCA), 20 U.S.C. § 1415. If the Court does have jurisdiction, the requirements for an injunction under § 1415(e)(3) must be satisfied. Since the Court concludes that it does not have jurisdiction, the second consideration need not be reached.

Congress enacted the EAHCA "to assure that all handicapped children have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, [and] to assure that the

rights of handicapped children and their parents and guardians are protected." 20 U.S.C. § 1400(c); *see also Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed. 2d 746 (1984) (the EAHCA establishes an enforceable right to free appropriate public education for handicapped children). Section 1415 of the statute provides specific procedural safeguards for handicapped children and their parents regarding the provision of this education. Among other protections, an administrative hearing is required when the parents object to changes in the child's educational placement. 20 U.S.C. § 1415(b)–(d). While the hearing is pending, the statute requires that "the child shall remain in the then current educational placement of such child." *Id.* at § 1415(e)(3).

█ Plaintiffs move to enjoin the defendants' efforts to remove Jack Corbett from BRI under this so-called "stay-put" provision of the EAHCA. The statute on its face, however, applies only to "[a]ny State *educational* agency, any local educational agency, and any intermediate educational unit which receives assistance under this subchapter." *Id.* at § 1415(a) (emphasis added). Defendants contend that since they are not educational agencies, do not receive any funding under the EAHCA, and have no control over Jack's educational program, the Court has no jurisdiction over them. *See id.* at § 1415(e)(4)(A). Plaintiffs respond that the defendants are providing related services to Jack under the EAHCA and that the procedural safeguards of § 1415 apply to any agency which provides such services under the Act.

The term "free appropriate public education" includes both special education and "related services." 20 U.S.C. § 1401(18). Related services are defined as "transportation, and such developmental, corrective and other supportive services, ... as may be required to assist a handicapped child from special education." *Id.* at § 1401(17); *see also* 34 C.F.R. § 300.13. A residential placement of a handicapped child is available as a "related service" under the Act where the placement is made for educational purposes. 34 C.F.R. § 300.302.

Plaintiffs correctly assert that the Court has jurisdiction under § 1415 over non-educational state agencies which provide EAHCA-related services. The federal regulations for the Act provide that the requirements of the statute are binding on all public agencies that have direct or delegated authority to provide special education or related services in a state that receives funds under the Act. 34 C.F.R. 300.2(b) and Comment. Because a state educational agency acts for the state as a whole, this is true regardless of whether the agency receives EAHCA funds directly. *Id.; see also Tilton, By Richards v. Jefferson County Bd. of Educ.*, 705 F.2d 800, 802 (6th Cir.1983) (Court exercised jurisdiction under Section 1415(e)(3) of the EAHCA over both state educational agencies and the state Department of Human Resources to consider propriety of closing a day treatment program for handicapped children run by the Department of Human Resources).

The requirement that states receiving funds under the EAHCA provide handicapped children with "related services" as well as special education necessarily has led to the involvement of non-educational agencies in the implementation of the Act. Congress clearly envisioned this involvement of other state agencies in the administration of Act and the provision of services to handicapped children. The EAHCA was amended in 1986 to provide that although state education agencies are responsible "for assuring that the requirements of [the EAHCA] are carried out," such allocation of responsibility "shall not be construed to limit the responsibility of agencies other than educational agencies in a state for providing or paying for some or all of the costs of a free appropriate public education to be provided handicapped children in the State." Pub.L. 99–457, Title II, § 203(a), 100 Stat. 1158 (codified at 20 U.S.C. § 1412(6). Under the Congressional scheme, then, the state educational agency is ultimately responsible for providing services under the EAHCA, while state health, welfare, and social service agencies are also expected to pay for appropriate servic-

es. H.R.REP. NO. 99–860, 99th Cong., 2d Sess. 21–22, *reprinted in* 1986 U.S.CODE CONG. & ADMIN.NEWS 2401, 2422–23.[2]

The State of California has also recognized the complexity of providing a free appropriate public education and related services to handicapped children. The California legislature has enacted legislation to facilitate and coordinate the provision of services to handicapped children among the various responsible state agencies. *See* 1984 Cal. Stat c. 1747; California Government Code §§ 7570–7588. The provision of services under the EAHCA is the joint responsibility of the Departments of Education and of Health and Welfare, with other state agencies providing services as required. *Id.* at § 7570. All state departments which provide education and related services are required to adhere to the procedural safeguards of 20 U.S.C. § 1415, and the decisions made in the statutorily-mandated due process hearings before the Department of Education are binding on the all state departments responsible for providing EAHCA–related services. Cal. Govt. Code § 7586(a).

Thus, it is clear that this Court has jurisdiction over a non-educational state agency providing related services under the EAHCA. If such a state agency attempts to make a change in a residential placement which is a related service under the Act, the Court can enjoin the change pursuant to 20 U.S.C. § 1415(e)(3) during the pendency of a state administrative appeal. Plaintiffs' argument in this case fails, however, because Jack's residential placement at BRI is not a related service under the federal Education for All Handicapped Children Act. Rather, it is an independent residential placement made pursuant to

state law alone by the Regional Center for the East Bay.

Under the federal statute, residential placements qualify as "related services" if made for educational purposes. 34 C.F.R. 300.302. That is, if placement in a public or private residential program is necessary to provide a handicapped child with a free appropriate education, that residential placement is a "related service" under the Act. The procedural safeguards of the statute apply with regard to any proposed changes in that placement. *See McKenzie v. Smith,* 771 F.2d 1527, 1534 (D.C.Cir. 1985); *Kruelle v. New Castle County School District,* 642 F.2d 687, 692–93 (3rd Cir.1981); *Christopher T. v. San Fran. Unif. Sch. Dist.,* 553 F.Supp. 1107, 1118–1119 (N.D.Cal.1982); *North v. District of Columbia Bd. of Ed.,* 471 F.Supp. 136, 140–41 (D.D.C.1979). However, where a residential placement is indicated for emotional or social needs, rather than for educational problems, the state is not required to provide the placement under the EAHCA. *See, e.g., Kruelle,* 642 F.2d at 693–94 (issue whether residential placement required for emotional problems and therefore responsibility of parents or social service agencies); *McKenzie,* 771 F.2d at 1534.[3]

In California, all residential placements for educational purposes are made pursuant to Government Code § 7572.5. First, the assessment of a handicapped child by the Department of Education's Individualized Education Program (IEP) team must recommend a residential placement. *Id.* at § 7572.5(a). The IEP team is then expanded to include a representative of the county mental health department. *Id.* The expanded team then makes a final determination that residential care is necessary for

---

**2.** The federal regulations for the EAHCA also specifically provide for the involvement of various agencies in the funding: "when it is necessary to place a handicapped child in a residential facility, a State could use 'joint agreements between the agencies involved for sharing the cost of that placement." 34 C.F.R. § 300.301(a).

**3.** It may be that in complex cases it will be impossible to separate emotional from educational needs. *See, e.g., North,* 471 F. Supp. at

141. However, at least one reported case found the handicapped individual's emotional problems to be "segregable from the learning process," and concluded that a residential placement was not necessary to provide an appropriate education. *Ahern v. Keene,* 593 F.Supp. 902, 914–14 (D.Del.1984). In any event, as the discussion below indicates, a determination of the merits of Jack's placement is not now properly before the Court.

the child to benefit from educational services, that the child's needs cannot be met through any combination of nonresidential services, and that residential services are available which will address the child's needs. *Id.* at § 7572(b). These residential placements for educational purposes are "related services" under the EAHCA and subject to the procedural protection of the Act. *Id.* at § 7586(a). Residential placements made by other state agencies, or independently by parents, are not educational placements. *Id.* at § 7581.

California does provide for another type of residential placement which is made independent of the EAHCA and solely pursuant to state law. Under the Welfare and Institutions Code, regional centers such as RCEB make residential placements for developmentally disabled persons, including children, directed at alleviating the social, personal, or physical aspects of the developmental disability. Cal.Welf. & Inst. Code §§ 4512(b), 4648(b). These placements are extra services for handicapped individuals in California which are exclusively provided by the state and not mandated by the EAHCA.

Regional centers are prohibited by state law from purchasing educational services for clients. *Id.* at § 4648(b); Cal.Admin. Code tit. 17, § 54662. Residential placements by regional centers are by definition not made for educational purposes. Therefore, they are not "related services" under the EAHCA. When a child is placed in a residential facility by a regional center, educational services for that child continue to be provided by the state Department of Education, but the Department of Education is not involved in initiating, administering, or funding the residential program. Cal.Govt. Code §§ 7579, 7581.

In the instant case, Jack's placement at BRI was made after evaluation by and upon the recommendation of the Regional Center for the East Bay as a means of controlling his self-abusive and self-injurious behavior. There is no evidence before the Court that this placement was in fact made for educational purposes by the RCEB, in violation of state law. Nor is there any evidence that any state educational agency has recommended a residential placement for Jack. In fact, his Individualized Education Program, prepared by the Los Angeles Unified School District, designates his recommended instructional setting as a special day class in a non-public school. Verified Complaint, Exhibit A at 5.

Accordingly, the Court cannot conclude that Jack's residential placement at BRI was one made for educational purposes. The Court thus lacks authority to enjoin the actions taken by RCEB and DSS with regard to Jack Corbett's residential placement at BRI. If plaintiffs now wish to obtain a residential placement for Jack under the EAHCA, they must follow the regular administrative procedures of the state department of education. Pursuant to the Act, plaintiffs would then have the right to appeal any adverse decision to the U.S. District Court. But they cannot in this lawsuit leapfrog the required administrative procedures.

Accordingly,

IT IS HEREBY ORDERED that plaintiffs' motion for a preliminary injunction is denied.